1998-NMCA-102

964 P.2d 142

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Katcv SHIJE, Defendant–Appellant.**

**No. 18359.**

Court of Appeals of New Mexico.

June 1, 1998.

Tom Udall, Attorney General, Elizabeth Blaisdell, Assistant Attorney General, Anthony Tupler, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Hilary Lamberton, Santa Fe, for Defendant–Appellant.

*OPINION*

BUSTAMANTE, Judge.

{1} Katcv Shije (Defendant) appeals his sentence for conspiracy to commit first-degree murder, arguing that the sentence impermissibly exceeded that prescribed by stat-

ute. For the reasons that follow, we affirm Defendant's sentence.

*FACTS AND PROCEDURAL HISTORY*

{2} A criminal information was filed June 14, 1996, charging Defendant with an open count of murder, conspiracy to commit murder, and contributing to the delinquency of a minor. The charges stemmed from the beating death of Jeffrey Lucero by Defendant, Defendant's cousin, and Defendant's brother.

{3} On February 28, 1997, pursuant to a plea agreement, Defendant was adjudged guilty of second degree murder, contributing to the delinquency of a minor, and conspiracy to commit murder. Defendant was sentenced to fifteen years on the murder charge, eighteen months on the contributing to delinquency charge, and fifteen years on the conspiracy charge. Defendant only challenges his sentence on the conspiracy charge. *See State v. Fish,* 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.1985) (issues raised in the docketing statement but not briefed are deemed abandoned).

*DISCUSSION*

■ {4} In this case of first impression, we are called on to decide the proper application and extent of NMSA 1978, Section 31–18–15(A) (1994). This subsection provides in relevant part:

A. If a person is convicted of a noncapital felony, the basic sentence of imprisonment is as follows:

. . .

(2) for a second degree felony resulting in the death of a human being, fifteen years imprisonment;

(3) for a second degree felony, nine years imprisonment.

It is undisputed that conspiracy to commit first degree murder is a second degree felony. *See* NMSA 1978, § 30–28–2 (1979). The only real question is whether the conspiracy resulted in the death of a person as contemplated by Section 31–18–15(A)(2).

{5} Defendant argues that "[c]onspiracy simply is not a felony resulting in the death of a human being." He maintains that since conspiracy is an initiatory crime resulting solely from an agreement to commit a crime, the agreement in and of itself could never result in the death of another person. In other words, he contends that the crime is complete once the agreement is reached. Since the crime was complete, the conspiracy could not and did not result in Lucero's death. Defendant would have us hold that all second degree conspiracies are subject to the sentencing stricture in Section 31–18–15(A)(3) of nine years.

■ {6} In answering the question posited, we are guided by certain principles of statutory interpretation. Foremost, "where the meaning of the statutory language is plain, and where the words used by the Legislature are free from ambiguity, there is no basis for interpreting the statute." *State v. Mobbley,* 98 N.M. 557, 558, 650 P.2d 841, 842 (Ct.App.1982); *accord State v. Michael R.,* 107 N.M. 794, 796, 765 P.2d 767, 769 (Ct.App.1988); *see also State v. Jonathan M.,* 109 N.M. 789, 790, 791 P.2d 64, 65 (1990) ("When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation."); *State v. Long,* 121 N.M. 333, 335, 911 P.2d 227, 229 (Ct.App. 1995) ("If the meaning of a statute is clear, it is to be applied as written."). The express language of Section 31–18–15(A)(2) requires only that the second degree felony—here conspiracy—result in the death of a human being. There is no requirement that the death occur in the commission of the conspiracy nor is there a requirement that the conspiracy physically cause the death. *See State v. Carrasco,* 1997–NMSC–047, ¶ 38, 124 N.M. 64, 946 P.2d 1075 (differentiating between an act done "in the commission of" a conspiracy and one which is the ultimate "result" of the conspiracy); *State v. Wood,* 117 N.M. 682, 685, 875 P.2d 1113, 1116 (Ct.App.1994) ("This Court will not read language into a statutory provision which is clear on its face.").

{7} Here, the Defendant and his co-conspirators agreed to kill and then proceeded to kill. If they had entered into the agreement but had not carried out the agreement, then the appropriate sentence would have been nine years. But, they agreed to murder Mr. Lucero and then carried out their agreement. The conspiracy set in motion

the events which led to the killing. It cannot seriously be denied that this conspiracy resulted in the death of a human being. *See Jonathan M.,* 109 N.M. at 790, 791 P.2d at 65; *Mobbley,* 98 N.M. at 558, 650 P.2d at 842.

{8} Defendant also argues that the 1994 amendments to second degree murder and voluntary manslaughter statutes, coupled with the enhanced penalties in Section 31–18–15 (amended at the same time), evince a legislative intent to limit the applicability of the enhanced penalties to only those identified as "resulting in the death of a human being." He contends that since conspiracy to commit first-degree murder does not have this magic language, his sentence was illegal. In support he relies on our recent case of *State v. Alvarado,* 1997–NMCA–027, ¶ 10, 123 N.M. 187, 936 P.2d 869, in which we said that the express purpose of the legislative changes at issue in this case was to increase the sentences for second degree murder and voluntary manslaughter.

{9} Under Defendant's interpretation, the only crime subject to the fifteen year sentence in Section 31–18–15(A)(2) would be second degree murder. However, the plain language of this subsection gives no indication that it is limited only to this one crime, and it certainly would have been easy enough for the legislature to have so limited it. This interpretation would require us to read words into the statute. *See State v. Gutierrez,* 102 N.M. 726, 730, 699 P.2d 1078, 1082 (Ct.App.1985) (when statute makes sense as written, this Court does not need to read words into the statute). We can discern a reasonable legislative objective from the language of Section 31–18–15(A)(2). *See State v. Andrews,* 1997–NMCA–017, ¶ 5, 123 N.M. 95, 934 P.2d 289. Namely, it is to prevent crimes that result in people's deaths.

{10} We have previously stated that "[p]enal statutes are not subjected to strained or unnatural constructions in order to infer exemptions from their provisions." We must read a statute "literally if its words are plain and unambiguous, provided such a construction would not lead to an injustice, absurdity, or contradiction." *Id.* Here, Defendant and his two cohorts agreed to kill Mr. Lucero and then pro-

ceeded to carry out the agreement. There is no injustice, absurdity, or contradiction in Defendant's increased penalty because the conspiracy resulted in Mr. Lucero's death. Indeed, applying this penalty to Defendant would appear to give effect to the legislature's apparently broader intent than to simply increase the penalties for only second degree murder and voluntary manslaughter.

*CONCLUSION*

{11} The district court judge did not exceed his sentencing authority. His decision is affirmed.

{12} **IT IS SO ORDERED.**

ALARID and PICKARD, JJ., concur.