1999-NMCA-026

974 P.2d 669

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Jimmie GUERRO, Jr., Defendant–Appellant.**

**No. 19,028.**

Court of Appeals of New Mexico.

Dec. 14, 1998.

Certiorari Denied, No. 25,565, Feb. 11, 1999.

Tom Udall, Attorney General, M. Victoria Wilson, Ass't Attorney General, Santa Fe, for Appellee.

Jane Bloom Yohalem, Santa Fe, for Appellant.

## OPINION

PICKARD, Judge.

{1} Defendant entered an *Alford*[1] plea to five counts of homicide by vehicle, NMSA 1978, § 66–8–101(A), (C) (1991), one count of great bodily injury by vehicle, § 66–8–101(B), (C), and one count of aggravated driving under the influence of intoxicating liquor or drugs, NMSA 1978, § 66–8–102(D) (1997).

1. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

He now appeals, claiming that his plea was not voluntarily and intelligently made, that the trial court improperly participated in his plea agreement, and that the trial court erred by failing to hold a plea-withdrawal hearing. We affirm.

## BACKGROUND

{2} Defendant was involved in an automobile accident that resulted in the deaths of five people and the serious injury of two others. There was conflicting evidence about the degree to which each of two vehicles contributed to the accident. At the emergency room, Defendant's blood alcohol level tested at 0.27%. Ultimately, Defendant was charged with five counts of homicide by vehicle, two counts of great bodily injury by vehicle, and one count of aggravated driving while intoxicated.

{3} Two days of Defendant's trial proceeded without incident. On the third day, Defendant's interpreter failed to appear. Attempts to locate a replacement that day were unsuccessful. It also became apparent that the original interpreter was not court-certified. After lengthy discussion, Defendant opted to continue the proceedings until a certified Navajo interpreter could attend.

{4} The proceedings resumed the following day with a court-certified interpreter. This interpreter spoke a slightly different dialect from Defendant's. In order to assure that Defendant and the interpreter could understand each other, the court allowed them to converse prior to the proceedings and the interpreter gave a running translation of the first few minutes of the proceedings. The court asked Defendant if he and the interpreter were able to communicate effectively, and Defendant gave assurances that they were. The court instructed Defendant to seek clarification from his attorney or the interpreter if he did not understand something in the course of the proceedings.

{5} Instead of continuing with the trial, the court next entered into a discussion of a plea agreement that had been arranged after the close of proceedings the previous day. The judge had counsel explain the nature of an *Alford* plea. Counsel stated that it was an assertion of innocence, but an acknowledgment that the State would likely have enough evidence to convict. The trial judge explained the sentence to Defendant, including the maximum sentence of six years for each vehicular homicide count. He also asked if Defendant's plea was induced by threats or promises, and Defendant answered in the negative. Defendant entered a no-contest plea to seven of the eight charges, with a sentencing cap of fifteen years.

{6} Defendant secured new counsel after the plea change. Defendant filed a motion to withdraw the plea the day before sentencing. He had raised the issue orally ten days earlier at a hearing for a continuance of sentencing. At that prior hearing, the trial court indicated that the withdrawal motion was not timely and would not be considered on the new sentencing date. At the sentencing hearing, the trial judge again indicated that he would not entertain the plea-withdrawal motion due to the delay in its filing. The trial judge also stated that he had reviewed the motion and memorandum and that it was not well founded based on his knowledge of the case. The trial judge did not conduct an evidentiary hearing on the motion.

{7} Defendant was sentenced to imprisonment for fifteen years, the maximum permitted by the plea agreement. Defendant filed a motion for reconsideration of his motion and of the failure to conduct an evidentiary hearing.

## DISCUSSION

{8} Defendant argues, under several theories, that his plea was not voluntarily or intelligently made. He also claims that the trial court was improperly involved in the plea proceedings. He ultimately contends that the trial court erred in refusing to hold an evidentiary hearing on his plea-withdrawal motion.

*Maximum Sentence for Vehicular Homicide*

{9} Defendant maintains that his plea was not intelligently made because he was misinformed of the maximum sentence which he could receive if he went to trial and was convicted. *See State v. Garcia*, 121 N.M. 544, 549–50, 915 P.2d 300, 305–06 (1996) (deeming misinformation about maximum sentence a basis for plea withdrawal). The

parties are in fundamental disagreement over the correct maximum sentence. Defendant claims that both his trial counsel and the trial court told him that the maximum sentence was thirty-eight years. He argues that the correct maximum sentence was twenty-one years and ninety days. The State acknowledges that thirty-eight years was incorrect, but contends that the correct maximum sentence was thirty-six years and ninety days. The disagreement centers around whether the proper maximum sentence for each count of vehicular homicide is three years, as Defendant argues, or six years, as the State contends. Whether the appropriate maximum sentence is three or six years turns on the question of whether or not the charge was subject to the sentencing provisions of NMSA 1978, § 31–18–15(A)(4) (1994).

{10} That section provides that:

(A) If a person is convicted of a noncapital felony, the basic sentence of imprisonment is as follows:

. . . .

(4) for a third degree felony resulting in the death of a human being, six years imprisonment.

Defendant argues that because the vehicular homicide statute does not include the language "resulting in the death of a human being," our legislature did not intend to include this crime in the six-year sentence authorized by Section 31–18–15(A)(4). He relies on *State v. Alvarado*, 1997–NMCA–027, ¶ 10, 123 N.M. 187, 936 P.2d 869, for the proposition that when the legislature amended the sentencing statute in 1994 without correspondingly amending the vehicular homicide statute to include the language "resulting in the death of a human being" (which it added to the murder and manslaughter statutes, *see* NMSA 1978, §§ 30–2–1(B), –3(A) (1994)), it evidenced its intent to maintain a maximum sentence of three years for vehicular homicide. We are unconvinced.

{11} Defendant makes essentially the same argument we rejected in *State v. Shije*, 1998–NMCA–102, 125 N.M. 581, 964 P.2d 142. In *Shije*, the defendant argued that because conspiracy to commit murder was not specifically enumerated as a felony "re-

sulting in the death of a human being," he was not subject to the increased sentencing provided for by Section 31–18–15(A)(2) and (4). *See Shije*, 1998–NMCA–102, ¶ 8, 125 N.M. 581, 964 P.2d 142. However, as this Court stated in *Shije*, the sentence increase is not so limited and is intended to deter any crimes that result in people's deaths. *See id.*, ¶ 9. Vehicular homicide, like conspiracy to commit murder, is encompassed by the statute.

■ {12} Because the maximum sentence for vehicular homicide is six years, Defendant was not materially misinformed as to the maximum sentence he could receive. His argument for plea withdrawal on that basis must therefore fail.

*Judicial Involvement in the Plea Bargaining Process*

{13} Defendant next argues that, contrary to Rule 5–304(A)(1) NMRA 1998, the trial court was involved in the plea bargaining process in his case. He contends that the trial judge improperly made an off-the-record remark that Defendant should consider accepting the State's plea offer and that the judge's remark rendered his plea involuntary.

{14} Defendant's affidavit stated that he entered a plea in part because "I was told the Judge was mad at me" and "I was told if I was found guilty it was going to be worse that the Judge would give me 38 years." Defendant's affidavit did not indicate any personal interaction between Defendant and the judge. Defendant's father's affidavit stated that Defendant's counsel made the same statements to him as he had made to Defendant. These statements do not establish judicial involvement in plea discussions; they may involve threats by the judge or counsel, but we address that possibility in our discussion of the next issue. The case investigator's affidavit stated that Defendant told him that "the Judge had indicated to [Defendant] that he might want to consider accepting a plea offer in this case." This last statement does go to the judge's participation in the plea process. However, that secondhand statement alone is not sufficient

to support Defendant's claim that the plea should be invalidated for violation of Rule 5–304(A)(1) under the circumstances of this case.

{15} First, we harbor some doubt about whether a judge's recommendation that a defendant "might" want to "consider" a plea agreement rises to the level of judicial participation in plea bargaining discussions. The rule states, "[t]he court shall not participate in any such discussions." Rule 5–304(A)(1). The Commentary to Rule 5–304 and cases addressing the similar federal rule indicate that the rule is intended to address more pervasive involvement than was present here—for example, judicial lobbying for a particular agreement or judicial arrangement of the deal through the district attorney's office. *See, e.g., United States v. Andrade-Larrios*, 39 F.3d 986, 989–90 (9th Cir.1994); *State ex rel. Anaya v. Scarborough*, 75 N.M. 702, 708, 410 P.2d 732, 736 (1966). But we need not decide in this case whether the judge's alleged comment amounted to participation in plea bargaining discussions.

{16} There are two more important reasons why the alleged comment does not require invalidation of the plea for violation of Rule 5–304. First, Defendant's proffered factual basis for this issue is a double-hearsay statement, which the trial judge was entitled not to credit. Second, Defendant did not raise the issue of Rule 5–304 in the trial court. It is elementary that issues not raised in the trial court need not be reviewed on appeal. *See* Rule 12–216 NMRA 1998. Because of the doubts we harbor about the issue on the merits and because of the inadequate factual basis for it in any event, we do not deem this case an appropriate one to make any exception to the rule requiring preservation of issues.

*Voluntary and Intelligent Plea*

{17} Defendant maintains that his plea was not intelligently and voluntarily made. He contends, first, that his attorney failed to adequately advise him of his chances of success at trial. He further claims that the trial judge did not ask sufficient questions to establish that the plea was freely, knowingly, and voluntarily made and that, in fact, Defen-

dant was under pressure by the judge to enter the plea. Finally, Defendant argues that his interpreter spoke a different dialect that may have interfered with his understanding, that he was given only five minutes to review the written agreement, and that his counsel denied him the opportunity to consult with his family.

{18} Defendant's assertion that he was not properly advised of his prospects for succeeding at trial is based on an investigator's description of various investigative avenues that counsel failed to pursue. However, the record establishes that these avenues were known to defense counsel and, at most, might have provided evidence that would have conflicted with the State's evidence. Thus, this type of strategy question is properly left to counsel, and we will not second-guess counsel's tactics. *See State v. Dean*, 105 N.M. 5, 8, 727 P.2d 944, 947 (Ct.App. 1986).

{19} As to the questioning and alleged pressure by the judge, we note that the judge gave a fairly standard explanation of the *Alford* plea, the agreement, and its implications, after which Defendant reaffirmed his plea. Defendant stated that his plea was voluntary and not a result of threats or promises. Both Defendant and his then counsel had indicated by their signatures on the plea agreement that it was voluntary and not the result of threats or promises apart from those contained in the agreement. Defendant claims that the judge erred by failing to inquire about possible defenses. However, that inquiry is not required by Rule 5–303 NMRA 1998. There is nothing in Rule 5–303 that the trial judge failed to cover in the colloquy. The colloquy and the signed agreement sufficiently established that Defendant's plea was knowing and voluntary.

{20} Also, we note that there is no support in the record for Defendant's assertion that the trial court was biased against him as a result of the delay caused by his counsel's failure to secure a satisfactory interpreter. While the judge did hold defense counsel responsible for the interpreter problems and did express his disappointment in counsel's actions, there is no indication in the record of

the proceedings that this dismay carried over to the judge's treatment of Defendant's case. The judge did not appear to hold a grudge against counsel and even allowed him to explain the situation and thanked him for the explanation.

■ {21} From all that appears of record, this case seems to be one in which Defendant simply had second thoughts about pleading guilty and, in hindsight, felt pressured by the circumstances of the plea offer, pursuant to which he received a fifteen-year sentence, instead of the possible thirty-eight-year sentence that he would have faced by going to trial. The inherent pressure caused by a plea offer of a more lenient sentence, however, does not make a plea involuntary. *See State v. French*, 82 N.M. 209, 210–11, 478 P.2d 537, 538–39 (1970) (holding that the choice between two possible sentences, if not "induced by fear, threats or coercion," is not involuntary).

■ {22} Regarding the interpreter issue, trial was postponed for a day while a certified interpreter was secured. All parties knew that this interpreter was a Navajo-speaker who, unlike Defendant, was not from the Alamo reservation. At the outset of the change of plea hearing, the trial court gave the interpreter an opportunity to speak with Defendant, and an opportunity to translate the proceedings. The judge then questioned Defendant on his ability to understand and communicate with the interpreter, and Defendant answered without hesitation that they understood each other well. Only then did the judge administer the oath to the interpreter. We also note that Defendant was proficient enough in the English language to complete high school and some college-level classes that were conducted in English. Based on this record, there is no merit to Defendant's contention that he did not understand his interpreter.

■ {23} There is similarly no support for his claim that he only had five minutes to review the agreement. Defendant decided to change his plea sometime between court recess at 2:43 p.m. and when proceedings resumed at 9:09 a.m. the following day. There is no indication of when during that interval

the agreement was made or reduced to writing. Nor does Defendant allege that the written agreement proved to be any different from what he thought he had agreed to orally. In addition, even if Defendant was presented with the plea offer shortly before the 9:09 a.m. start of proceedings, the record reveals that the change of plea proceeding took over an hour and included several off-the-record breaks. During all of this time, Defendant did nothing to alert the judge to his desire, if it existed at that time, to consult with anyone or take further time to consider the plea agreement. Without any support for this claim, it cannot be considered a basis for withdrawal. *Cf. State v. Bruce*, 82 N.M. 315, 315–16, 481 P.2d 103, 103–04 (1971) (holding under former Civil Procedure Rule 93 that a post-conviction motion may be summarily denied when a claim, even if proved, would not provide a basis for relief).

*Failure to Hold Evidentiary Hearing*

■ {24} Defendant contends that the trial court erred by refusing to hold an evidentiary hearing on his plea-withdrawal motion. This refusal is reviewed for abuse of discretion. *See Garcia*, 121 N.M. at 546, 915 P.2d at 302. The trial court abuses its discretion when it can be shown to have acted unfairly, arbitrarily, or committed manifest error. *See id.*

■ {25} The State relies on *State v. French*, 92 N.M. 94, 582 P.2d 1307 (Ct.App. 1978) [hereinafter *French II* ], to support its position. In *French II*, the court refused to hold an evidentiary hearing on the defendant's plea-withdrawal motion, which was based on defense counsel's alleged threat to withdraw if the defendant did not plead guilty. *See id.* at 96–97, 582 P.2d at 1309–10. This Court affirmed because the trial court's finding that no threat had been made to the defendant was supported both by an affidavit by counsel's partner and by the defendant's denial at the time of the plea that his plea resulted from threats. *Id.* at 96, 582 P.2d at 1309. That the judge in the instant case actually threatened Defendant with a maximum sentence is similarly contradicted by Defendant's assertion that no threats were made to him. As in *French II*, there was

also no indication that there was other evidence, uncontradicted by the record, that was available in support of any of the grounds of Defendant's motion.

{26} Although *French II* controls this issue, cases decided under former Civil Procedure Rule 93, the precursor of current Rule 5–802 NMRA 1998, regarding the need for an evidentiary hearing are also instructive here. *See State v. Peppers*, 110 N.M. 393, 396, 796 P.2d 614, 617 (Ct.App.1990) (tracing the history of Rule 5–802). If a defendant would not be entitled to a hearing at his or her final opportunity to present issues, the post-conviction or habeas corpus proceeding, there is little reason to grant a hearing at this stage of the proceedings. Similarly, if a defendant would be entitled to a hearing at a later stage of the proceedings, judicial economy would be served by holding the hearing now. *Cf. State v. Duran*, 105 N.M. 231, 232–33, 731 P.2d 374, 375–76 (Ct.App.1986) (permitting late appeal under certain circumstances, rather than forcing defendant to prove ineffective assistance at later post-conviction proceedings). Analysis of the post-conviction cases shows that the trial judge was warranted in refusing an evidentiary hearing here because many of Defendant's claims did not state grounds for relief and other claims were contradicted by occurrences on the record or within the judge's personal knowledge.

{27} For example, in *State v. Swim*, 82 N.M. 478, 479–80, 483 P.2d 1318, 1319–20 (Ct.App.1971), and *State v. Reece*, 79 N.M. 142, 143, 441 P.2d 40, 41 (1968), our Courts held that an evidentiary hearing is required where a post-conviction claim is based on matters that occurred outside of the courtroom, such that the record is unhelpful in resolving them. In both *Swim* and *Reece*, the defendants claimed that, despite prior statements in court that they had not been subject to threats, in fact they had been coerced by law enforcement personnel, who used mental and physical punishment to influence them. *See Swim*, 82 N.M. at 479, 483 P.2d at 1319; *Reece*, 79 N.M. at 142–43, 441 P.2d at 40–41. The instant case is distinguishable because, although the alleged coercion occurred off-record, it involved the judge's alleged threat to counsel that he would impose a maximum sentence if Defendant were convicted at trial and this involved a matter within the judge's personal knowledge. In *State v. Buchanan*, 78 N.M. 588, 590, 435 P.2d 207, 209 (1967), the Court noted an exception to the need for a hearing on issues that can be resolved based on the judge's personal observation. Defendant's claims of coercion, judicial bias, and failure to understand his interpreter in this case were all of the sort that the judge could properly decide, without an evidentiary hearing, based on his own observation and knowledge of the case. *See id.*

{28} Because the same judge presided over the trial, the plea change, and the sentencing, the judge's denial of the plea-withdrawal motion without conducting a hearing was reasonably based on personal observation. Indeed, the types of claims Defendant made were mostly of the kind that the judge would necessarily have witnessed. Therefore, we hold that, under these circumstances, the trial court's refusal to hold an evidentiary hearing was well within his discretion.

**CONCLUSION**

{29} Based on the foregoing discussion, we affirm.

{30} **IT IS SO ORDERED.**

WECHSLER, J., and BUSTAMANTE, J., concur.

