This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                      **NO. 32,503**

**DONTE POWER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Albert S. (Pat) Murdoch, District Judge**

The Appellate Law Office of Scott M. Davidson, Ph.D.
Scott M. Davidson
Albuquerque, NM

for Appellant

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

## DECISION

**BOSSON, Justice.**

Defendant Donte Power appeals his convictions for first-degree felony murder, second-degree murder, armed robbery with a firearm, intentional child abuse, tampering with evidence, and resisting, evading, or obstructing an officer. Concluding that Defendant's convictions for second-degree murder and armed robbery violate the United States Constitution Double Jeopardy Clause because they effectively convict him two times for one homicide and one robbery, we vacate them. We do not find merit in Defendant's additional arguments, and we uphold his remaining convictions.

**BACKGROUND**

Defendant does not object to his convictions on substantial evidence grounds. Thus, we consider the facts as those "viewed in the light most favorable to supporting the verdict." *State v. Woodward*, 121 N.M. 1, 3, 908 P.2d 231, 233 (1995) (internal quotation marks and citation omitted).

Yan and Feng Chen owned and operated a restaurant, Golden Star Restaurant, in Albuquerque, New Mexico. On July 9, 2008, around lunch time, Yan left the restaurant to make a food delivery. The Chens' five-year-old son, Henry, was eating lunch at a table in front of the register. While Yan was gone and Feng was working in the front of the restaurant, Feng's mother, who happened to be in the kitchen,

heard what sounded like an explosion in the front of the restaurant. Feng's mother found Feng on the ground with a bullet wound through her chest. Feng died shortly thereafter.

Only a few hours later, police arrested Defendant at the nearby Coronado Mall. Eventually, Defendant was charged with Feng's murder and convicted of first-degree murder, second-degree murder with a firearm, armed robbery with a firearm, intentional child abuse, tampering with evidence, and resisting, evading or obstructing an officer. The district court judge sentenced Defendant to life with eligibility of parole for the felony murder, a concurrent fifteen-year sentence for the second-degree murder with a one-year firearm enhancement, and a consecutive eighteen-year sentence for the remaining crimes, including another two years for the firearm enhancement for the intentional child abuse and armed robbery.

**DISCUSSION**

Defendant appeals the convictions for murder and armed robbery and the firearm enhancements on double jeopardy grounds. In addition, Defendant claims that involvement by the district court judge in plea discussions was improper, that a prosecutor's misstatement of law deprived Defendant of a fair trial, that the State's burden of proof was diluted, and that eyewitness testimony based on "show-up"

3

evidence should have been suppressed.

**Double Jeopardy**

The State concedes that we should vacate Defendant's convictions for second-degree murder and armed robbery because the facts only support a finding of one death and because the underlying felony to the felony murder is the armed robbery. We commend the State for conceding this issue, and we agree. Claims of double jeopardy are legal questions and are reviewed de novo. *See State v. Gallegos*, 2011-NMSC-027, ¶ 51, 149 N.M. 704, 254 P.3d 655.

It is a violation of double jeopardy to impose two or more homicide convictions for one death. *See State v. Santillanes*, 2001-NMSC-018, ¶ 5, 130 N.M. 464, 27 P.3d 456. Because Defendant was convicted for both first-degree felony murder and second-degree murder for killing one person, Feng, we must vacate one of the convictions. *See id.* ¶ 28 ("[D]ouble jeopardy requires that the lesser offense merge into the greater offense such that the conviction of the lesser offense, not merely the sentence, is vacated."). The first-degree conviction survives as the greater offense. *See id.*

In addition, it is a violation of double jeopardy to impose convictions for both a felony murder and its predicate felony. *State v. Frazier*, 2007-NMSC-032, ¶ 1,

4

142 N.M. 120, 164 P.3d 1. Because Defendant's first-degree felony murder survives the consolidation of the two murder convictions, and because the underlying felony to the felony murder was the armed robbery for which Defendant was also convicted, we must vacate Defendant's conviction for armed robbery. *See Santillanes*, 2001-NMSC-018, ¶ 28.

In regard to Defendant's additional double jeopardy argument, that more than one of Defendant's sentences should not have been enhanced because of the use of the same firearm, the issue is now moot because the Court has vacated two of the three sentences that included the enhancement. With the convictions for second-degree murder and armed robbery vacated, only the conviction for intentional child abuse remains as enhanced. In addition, this Court has already determined that when firearm enhancements relate to distinct crimes the situation does not implicate a violation of the Double Jeopardy Clause. *See State v. Espinosa*, 107 N.M. 293, 297-98, 756 P.2d 573, 577-78 (1988).

**Plea Discussions**

Defendant argues that involvement by the district court judge in plea discussions was reversible error, despite the fact that Defendant's trial counsel did not preserve the error. "[E]rrors will not be considered for the first time on appeal

unless they are jurisdictional, or of a fundamental character." *State v. Rodriguez*, 81 N.M. 503, 505, 469 P.2d 148, 150 (1970). Defendant argues the error was fundamental. Fundamental error exists when circumstances "'shock the conscience' or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (quoting *Rodriguez*, 81 N.M. at 505, 469 P.2d at 150).

According to Defendant, the district court judge convened the State and Defendant in his chambers to discuss the State's plea offer. Defendant asserts that the discussion occurred off the record because of the high-profile nature of the case. During the plea discussion, Defendant alleges that the district court judge noted the maximum sentence for the offered plea agreement and contrasted the length of that sentence with the potential sentence if Defendant were to go to trial. Defendant apparently expressed at that time that he would not accept a plea deal because he was innocent.

Defendant claims that the district court judge's involvement in plea discussions violated Rule 5-304(A)(1) NMRA, which disallows court involvement in plea discussions. Defendant asserts that the district court judge's involvement was harmful because of "vindictiveness in sentencing in addition to possibility of

bias against [Defendant] in rulings throughout the remainder of the proceedings due to his rejection of the State's offer and his disagreement with the judge about the wisdom of accepting the State's offer."

The State responds, citing Rule 12-213(A)(3) NMRA, that Defendant was "required to cite pertinent portions of the record on appeal in support of his factual assertions" and that his failure to do so is dispositive. Rule 12-213 requires summaries of proceedings to cite the record proper, transcript of proceedings, or exhibits in support of each factual representation. Further, the State cites *State v. Sosa*, 2009-NMSC-056, ¶ 41, 147 N.M. 351, 223 P.3d 348, and *State v. Salas*, 2010-NMSC-028, ¶ 19, 148 N.M. 313, 236 P.3d 32, in support of its argument that this Court does not review errors outside the record. We uphold those cases here by declining to address this issue without a record. Even if Defendant had argued ineffective assistance of counsel based on counsel's failure to raise the issue below, which Defendant has not argued, the State points out that this Court would at the most remand for an evidentiary hearing at this time. Such arguments, however, are best made through habeas corpus proceedings and with established evidence. *See Saiz*, 2008-NMSC-048, ¶ 65, 144 N.M. 663, 191 P.3d 521.

If Defendant's claims that the district court judge's involvement were

documented in the record as alleged, however, we still would not find that the comments alleged rise to the level of fundamental error. In *State v. Guerro*, 1999-NMCA-026, ¶¶ 13-14, 126 N.M. 699, 974 P.2d 669, our Court of Appeals considered the argument that a judge's comments violated Rule 5-304 when there was some evidence that a judge "had indicated to [Defendant] that he might want to consider accepting a plea offer." (Internal quotation marks omitted.) The Court of Appeals had doubts as to "whether a judge's recommendation that a defendant 'might' want to 'consider' a plea agreement rises to the level of judicial participation in plea bargaining discussions." *Guerro*, 1999-NMCA-026, ¶ 15. The Commentary to Rule 5–304 and cases addressing the similar federal rule led the Court of Appeals to conclude that the purpose of Rule 5-304 was to "address more pervasive involvement than was present here—for example, judicial lobbying for a particular agreement or judicial arrangement of the deal through the district attorney's office." *Guerro*, 1999-NMCA-026, ¶ 15 (citing *United States v. Andrade–Larrios*, 39 F.3d 986, 989–90 (9th Cir. 1994) and *State ex rel. Anaya v. Scarborough*, 75 N.M. 702, 708, 410 P.2d 732, 736 (1966)).

We harbor the same doubts that the Court of Appeals had in *Guerro* about the application of Rule 5-304 in this case. Assuming an evidentiary hearing would find

that Defendant's allegations about the district court judge's statements were true, such comments would not rise to the level of pervasive involvement in the plea negotiations. The district court judge did not lobby for the proposal or adoption of a particular plea agreement or invasively involve himself in the plea process. Rather, all that is alleged is that the district court judge pointed out that the jail time Defendant could face if he were convicted was longer than the sentence offered under the State's plea deal. Therefore, we conclude that the district court judge did not commit fundamental error.

**Eyewitness Testimony Based on "Show-Up" Evidence**

Defendant argues that "show-up" eyewitness testimony, given by three witnesses who identified him as the man they saw carrying a gun as he entered the Coronado Mall shortly after Feng's murder, "give[s] rise to a substantial likelihood of misidentification" and, thus, a violation of due process. He argues that the identifications should have been suppressed, as requested before trial, because they were impermissibly suggestive. The identifications were made while Defendant was alone, in the custody of the police, and while he was visibly handcuffed.

While show-up identifications are inherently suggestive and should be avoided, a court must balance the "corrupting effect of the suggestive identification"

against several factors: "the witness's opportunity to view the criminal at the time of the crime, the attention the witness paid, the accuracy of any pre-identification description, the witness's level of certainty at the identification, and the time between the crime and the identification." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 20, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). Admissibility decisions should consider the reliability of identifications by considering the totality of the circumstances. We defer to the district court's findings on this matter and review the district court judge's ultimate decision to admit the identifications de novo.

Rather than witnessing Feng's murder, the three show-up witnesses in this case reported suspicious activity that occurred *after* the crime, and the witnesses' identifications of Defendant, as the man they saw acting suspiciously, led to Defendant's arrest. Each of the three witnesses reported seeing a man with a gun enter the Coronado Mall in Albuquerque shortly after Feng's murder. All three witnesses described the man as dark-skinned but not Black, likely Hispanic, and wearing a white t-shirt with jeans or long jean-shorts when he entered the mall. Two of the witnesses saw the man walking around the parking lot shirtless before he entered the mall. Two of the witnesses who saw the man walking around shirtless

10

also saw the same man take a shirt out of Defendant's car and put his shirt on before entering the mall. The witness who entered the mall at the same time as the man noticed him pulling his shirt down, perhaps finishing putting it on.

In deciding whether to suppress the show-up identifications, the district court judge made a series of findings. First, he noted that the length of time between the point in time when the three witnesses initially viewed the man they described seeing at the mall and the point in time when they identified Defendant as the same man was "relatively brief," within two hours. The district court judge also found that, whoever it was that the witnesses saw, it seemed to be the same man: all three witnesses saw the man they reported around the same time, near the same place, and they all saw the man they witnessed putting on a shirt and carrying a gun on his right hip. The fact that they all likely saw the same person, the district court judge found, made their combined testimony more reliable. Each witness had a reason to pay attention to the person they saw because all three witnessed the person carrying a gun and two of the three observed other suspicious behavior. The three witnesses were very certain in their identifications at the time of the show-up and fairly certain during two of the three witnesses' in-court identifications; the third witness, however, was less certain at trial. Finally, the district court judge noted that the

nature of the identifications was not suggestive because nothing about the way the officers presented Defendant at the time of the show-up identifications made the witnesses feel like they had to choose the person.

Even deferring to the district court judge's findings, we do question his finding that the circumstances surrounding the three identifications were not suggestive. The officers may not have made the witnesses feel like they had to choose Defendant, but all three identifications occurred when Defendant was in or near a police car, while he was alone, and while he was handcuffed. It was a highly suggestive situation such as those recognized in *Patterson*, 2001-NMSC-013, ¶ 21 ("This show[-]up identification was especially suggestive because the police spotlighted Petitioner using the headlights of a police vehicle while the witnesses were attempting to determine if he was the perpetrator of the robbery."), and *State v. Johnson*, 2004-NMCA-058, ¶ 16, 135 N.M. 567, 92 P.3d 13 (recognizing that show-up identification circumstances were suggestive when identification of the defendant occurred immediately following witnesses' identification of a car involved in the crime).

Taking the remainder of the district court judge's findings and applying the law de novo, however, we cannot say that the district court judge's application of the

law was erroneous. Even though the circumstances of the identification were suggestive, we affirm the district court judge's legal conclusion because under the totality of the circumstances other evidence overcomes the inherent suggestiveness of the show-up identification in this case. The reliability of the witnesses' identifications, particularly because two of the prior descriptions by the witnesses occurred independently and were consistent, outweighs the inherent suggestiveness of the show-up identifications.

The Court of Appeals addressed similar facts in *State v. Torres*, 88 N.M. 574, 575-76, 544 P.2d 289, 290-91 (Ct. App. 1975), and upheld the decision to permit evidence of the identification. In *Torres*, the police located a defendant based on a witness's description and arrested the man after finding that he possessed stolen property. *Id.* at 575, 544 P.2d at 290. The police brought the defendant, alone, in a police car to be viewed by the witness. *Id.* The police asked the witness, "Is this the man you saw [leaving the crime scene]?" *Id.* The witness positively identified the arrested man. *Id.* The Court of Appeals concluded that under the totality of the circumstances test, allowing the testimony was not a due process violation. *Id.* Finding a similar outcome after balancing the factors in this case, we affirm the district court judge's decision to permit the admission of the show-up identifications.

**Prosecutor's Statement of Law**

Because he did not preserve the argument below, Defendant asks that this Court review his allegations that the prosecutor in his case made fundamental error by misstating the law. Again, "errors will not be considered for the first time on appeal unless they are jurisdictional, or of a fundamental character." *Rodriguez*, 81 N.M. at 505, 469 P.2d at 150.

Defendant argues that he was denied the right to a fair trial and that the State committed fundamental error when the prosecutor told the jury,

> I'd like to just point out for you in your deliberations on Count 1 there are two alternatives, first-degree murder and the step-downs and then felony murder. They're both alternatives to Count 1. You can find him guilty of both, first-degree murder and felony murder. You can find him guilty of second-degree murder and felony murder.

Defendant argues that this statement was "an egregious misstatement of the law" because a conviction of guilt for two murders for the same body violates double jeopardy, and therefore the statement constitutes reversible error under *State v. Taylor*, 104 N.M. 88, 96, 717 P.2d 64, 72 (Ct. App. 1986), and *State v. Gonzales*, 105 N.M. 238, 239-41, 731 P.2d 381, 382-84 (Ct. App. 1986).

We need not consider this argument, however, because the quoted prosecutor's statement, above, does not misstate the law. As pointed out by the

14

State, a finding of guilt by a jury is not the same as a conviction. A court avoids double jeopardy "[w]hen faced with jury verdicts for two separate murder theories as to the same killing," by entering "one general judgement of conviction for first-degree murder." *Saiz*, 2008-NMSC-048, ¶ 26.

Defendant also argues that the State erred when the prosecutor allegedly told the jury that "they must come to an agreement with the other 11 jurors chosen for the petit jury." Although Defendant does not argue that this alleged statement would constitute fundamental error, he argues that it "compounds the prosecutor's misconduct with respect to misstatement of law." Because we found no misstatement of law where Defendant argued there was one, we need not address this argument. In addition, during jury selection, the prosecutor actually did not make a statement about what the juror must do. Rather, the prosecutor asked whether the jurors would be able to "agree one way or the other and get a decision," whether "anybody fe[lt] like they're going to have a hard time coming to a decision with 11 other people?" The prosecutor did not tell the jurors that they *had to* agree with the other jurors.

For the foregoing reasons, we do not find the prosecutor misstated the law and conclude that there was no fundamental error due to a prosecutorial misstatement of

15

the law.

**State's Burden of Proof**

Defendant argues that the "beyond a reasonable doubt" standard of proof required to convict him was diluted. Structural error is only committed in a limited number of circumstances, which include when a court gives defective beyond a reasonable doubt instructions. *See State v. Padilla*, 2002-NMSC-016, ¶ 16, 132 N.M. 247, 46 P.3d 1247 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 281-82 (1993)). We review this structural error argument de novo. *See State v. Montoya*, 2008-NMSC-043, ¶ 9, 144 N.M. 458, 188 P.3d 1209.

Defendant argues the appropriate legal standard was diluted because the district court failed "to correct a juror's misstatement that the prosecution's burden would be met under a majority-of-the-evidence standard le[aving] the jury with the impression that the State's burden of proof was a mere preponderance of the evidence." A juror's "guess" during jury selection, that the "burden of proof" meant "that the majority of the evidence is the burden of the prosecutor to present," was a dilution of the proper beyond a reasonable doubt standard. In response to the juror's "guess," the district court judge said that "burden of proof" means that if the State makes a charge "[it] has to prove the charge." The idea of burden of proof, however, is distinct from the standard of proof. The burden of proof simply assigns the

17

responsibility of proving the elements of a legal claim to one side or the other during a trial, regardless of what standard of proof is required in the claim. The district court judge correctly stated, "All right, so the burden is on the State. They have to carry the entire burden. They have to prove everything. If they don't prove the allegations to you, then the vote is not guilty."

Defendant also argues that the judge's comments diluted the standard of proof by "suggesting that the reasonable doubt standard was the standard that one could use in choosing a child's school or buying a car." While such suggestions, if they had been made alone, may have impermissibly trivialized the "beyond a reasonable doubt" standard, the district court judge said much more. The district court judge concluded the discussion of reasonable doubt by stating that deciding to take a close family member off of life support is "probably the clearest example of the type of decision that one has to make, and that there's always doubt. And the reasonable doubt keeps you from acting. The doubts that are not reasonable doubts don't keep you from acting. Is that clear?" In addition, in each of the other examples discussed, the district court judge conceptualized the "doubt" described as a "reasonable doubt" as the type of doubt that would cause a person not to make a decision in a particular situation.

Also weighing against any earlier confusion that may have been caused, the district court judge clearly and correctly stated the standard of review at the end of trial. The same jury instructions were given to the jury:

> The law presumes the defendant to be innocent unless and until you are satisfied beyond a reasonable doubt of his guilt.
> The burden is always on the State to prove guilt beyond a reasonable doubt. The test is one of reasonable doubt. It is not required that State prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense. The kind of doubt that would make a reasonable person hesitate to act in the graver and more important affairs of life.

Because we do not find that the standard of proof applied at Defendant's trial was diluted, we do not reverse Defendant's claim of error.

**CONCLUSION**

In conclusion, we vacate Defendant's convictions for second-degree murder and armed robbery with a firearm because those convictions violated the Double Jeopardy Clause of the United States Constitution, and we remand for re-sentencing. We uphold Defendant's other convictions, finding no reversible error.

**IT IS SO ORDERED**.

                                                   _____

**RICHARD C. BOSSON, Justice**

19

**WE CONCUR:**

_____

**CHARLES W. DANIELS, Chief Justice**

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**