This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37137

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**XAVIER ARTHUR NELSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren J. Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Xavier Arthur Nelson was convicted, after a jury trial, of vehicular homicide in violation of NMSA 1978, Section 66-8-101 (2016). Defendant asks us to reverse his conviction, arguing that the district court erroneously admitted (1) data retrieved from a device in his vehicle that recorded the speed Defendant's vehicle was traveling when it collided with the vehicle in which Victim was a passenger and (2) testimony about driver perception and reaction times. Defendant also challenges his

sentence, arguing that the district court (3) lacked statutory authority to impose six years of imprisonment for his offense and (4) lacked adequate evidentiary and legal bases for concluding that his offense is a "serious violent offense" for purposes of the Earned Meritorious Deductions Act (EMDA), NMSA 1978, § 33-2-34 (2015). We affirm.

## DISCUSSION[1]

### I. The Admission of Testimony Regarding Speed Data Retrieved From Defendant's Vehicle's Event Data Monitor Does Not Warrant Reversal

{2}     Defendant argues that the district court committed reversible error by admitting the testimony of James Sciolla as an expert witness under Rule 11-702 NMRA, and allowing him to testify about data regarding the speed Defendant's Subaru was traveling—data that Sciolla retrieved from the Subaru's Event Data Monitor (EDM). Reviewing this claim of error in the admission of expert testimony under an abuse of discretion standard, *see State v. Alberico*, 1993-NMSC-047, ¶ 58, 116 N.M. 156, 861 P.2d 192, we disagree. The district court did not abuse its discretion by admitting Sciolla's testimony and, even if it had, any error was harmless.

{3}     Contrary to Defendant's characterization, Sciolla's testimony did not include any interpretation or analysis of the EDM data or any other opinion testimony. The district court specifically prohibited Sciolla from offering such opinions because they were beyond the scope of his expertise. Consistent with this ruling, Sciolla described the data he retrieved: that Defendant was driving 106 miles per hour before the crash occurred. The district court did not abuse its discretion in determining that Sciolla was qualified to describe that data. Sciolla testified that Subaru trained him to perform these tasks and that he was a certified master technician, and he explained how the speed sensors work and how the vehicle stores speed data. Defendant has not persuaded us that the district court erred by admitting Sciolla's testimony.

{4}     Even if we were to conclude that the district court erred, we would not reverse Defendant's conviction because "there is no reasonable probability the error affected the verdict." *State v. Armijo*, 2014-NMCA-013, ¶ 13, 316 P.3d 902 (internal quotation marks and citation omitted). Any such error was harmless because Sciolla's testimony was cumulative of other evidence of the extreme speed of Defendant's vehicle before the crash. Among other evidence, the State admitted a photograph of Defendant's speedometer, which indicates that Defendant was driving approximately 110 miles per hour. We see no basis for concluding that the admission of Sciolla's testimony, if error, was prejudicial and therefore warrants a new trial.

### II. The Admission of Testimony About Perception-Reaction Time Does Not Warrant Reversal

---

1Because the parties are familiar with the factual background, this memorandum opinion does not include a background section. We describe the pertinent facts in the discussion section.

**{5}**      Defendant argues that the district court committed reversible error by admitting testimony from the State's accident reconstruction expert, Joseph Manning, about how the speed of one vehicle impacts the perception and reaction time of the driver of a second vehicle who might need to react to avoid a collision with the first vehicle. Assuming without deciding that the admission of this testimony was an abuse of discretion, *see Alberico*, 1993-NMSC-047, ¶ 58, we conclude that any error was harmless for two reasons.

**{6}**      First, although Manning initially testified about the potential perception-reaction time of the driver of the vehicle in which Victim was a passenger, he clarified during his direct examination that he could not determine any reaction times in this case.

**{7}**      Second, to the extent that the jury considered Manning's initial testimony about perception-reaction time, the State did not rely on that testimony to prove Defendant's speed of travel or recklessness. Manning's initial testimony did not pertain to Defendant's perception-reaction times; it pertained to the driver of the vehicle that was struck by Defendant's vehicle. Notwithstanding the subject matter of the testimony, Defendant asserts that the testimony had some bearing on whether Defendant braked before the crash. However, Defendant fails to develop any argument connecting the testimony in question to the issue of whether Defendant applied his brakes, and we will not develop any such argument for him. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be. To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them." (alteration, internal quotation marks, and citation omitted)).

**{8}**      We conclude that the admission of the testimony in question, if erroneous, was harmless. We therefore decline to reverse Defendant's conviction on this basis.

## III.    The Appropriate Basic Sentence Was Six Years of Imprisonment

**{9}**      Defendant claims that the district court erred by sentencing him to six years of imprisonment, which is the enhanced basic sentence that applies when a person is convicted of "a third degree felony resulting in the death of a human being," pursuant to NMSA 1978, Section 31-18-15(A)(8) (2016, amended 2019),[2] rather than the ordinary basic sentence for third degree felonies, which is three years. Defendant acknowledges that his offense, vehicular homicide, is a third degree felony that caused the death of another person. But he argues that the only offenses subject to a six-year basic sentence under Section 31-18-15(A)(8) are those that the Legislature has explicitly identified as "resulting in the death of a human being" by including that language in the statute defining the offense. According to Defendant, because the homicide by vehicle statute does not include that phrase, the district court lacked statutory authority to impose a basic sentence of six years. Reviewing this question of statutory interpretation

---

[2]In this opinion, unless otherwise indicated, all references to Section 31-18-15(A) are to the 2016 version that was in effect at the time of Defendant's sentencing.

de novo, *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022, we disagree.

**{10}** As Defendant acknowledges, his argument cannot be reconciled with our precedent. In *State v. Shije*, 1998-NMCA-102, ¶¶ 8-9, 125 N.M. 581, 964 P.2d 142, we concluded that the absence of "magic language" in NMSA 1978, Section 31-18-15(A)(2) (1994)—specifically the phrase "resulting in the death of a human being"—is not dispositive in determining whether the enhanced basic sentence or the ordinary basic sentence applies to the offense of conspiracy to commit second degree murder. We reasoned that the purpose of enhanced basic sentences "is to prevent crimes that result in people's deaths[,]" and that it would undermine that purpose to limit the application of the enhanced basic sentence for second degree felonies resulting in death to offenses defined by statutes that include the specific phrase. *Shije*, 1998-NMCA-102, ¶ 9. Accordingly, we held that because the defendant was convicted of conspiracy to commit murder, and the murder actually occurred, he was subject to the enhanced basic sentence. *Id.* ¶ 10.

**{11}** Applying *Shije*, we have previously considered and rejected Defendant's proposed holding. In *State v. Guerro*, 1999-NMCA-026, ¶ 1, 126 N.M. 699, 974 P.2d 669, the defendant was convicted of exactly the same crime that Defendant was convicted of in this case: third degree vehicular homicide. The defendant in *Guerro* argued that "because the vehicular homicide statute does not include the language 'resulting in the death of a human being,' our legislature did not intend to include this crime in the six-year sentence authorized by [NMSA 1978,] Section 31-18-15(A)(4) [(1999)]."[3] *Guerro*, 1999-NMCA-026, ¶ 10. We disagreed, reiterating the observation we made in *Shije*: the sentence increase "is intended to deter any crimes that result in people's deaths." *Guerro*, 1999-NMCA-026, ¶ 11. We therefore held that "[v]ehicular homicide . . . is encompassed by the statute." *Id.*

**{12}** More recently, in *State v. Franco*, 2016-NMCA-074, 387 P.3d 279, we again rejected the approach Defendant proposes here. In *Franco*, we concluded that the Legislature intended for the enhanced basic sentence of fifteen years to apply "to *all* second degree felonies resulting in deaths." *Id.* ¶ 21. We reaffirmed that the purpose of the enhanced basic sentences is "to increase the penalty for crimes involving the death of a human being." *Id.* ¶ 25. And we held that the enhanced basic sentence of fifteen years applied to the defendant's offense—shooting at a motor vehicle, a second degree felony which, in that instance, caused the death of an occupant—even though our statutes did not specifically enumerate that offense as one to which the enhanced basic sentence applied. *Id.* ¶¶ 1, 25.

**{13}** Defendant asks that we overrule all of these precedents, arguing that "*Franco* is contrary to the Legislature's sentencing scheme" and that legislative changes call

---

[3]Section 31-18-15(A)(4) (1999) was the predecessor to Section 31-18-15(A)(8), the statute on which the district court relied to determine Defendant's basic sentence. In 2003, the Legislature added subsections to Section 31-18-15, which changed the subsection numbers, but the Legislature did not amend the language at issue in *Franco*. *See* 2003 N.M. Laws, ch. 1, § 5.

*Guerro* and *Shije* into question. Defendant directs our attention to the approach the Legislature has chosen for assigning basic sentences to various offenses involving child abuse resulting in death. Specifically, Defendant notes that NMSA 1978, Section 30-6-1 (2009), creates tiered basic sentences, providing that (1) a person convicted of "negligent abuse of a child that results in the death of the child is guilty of a first degree felony[,]" Section 30-6-1(F); (2) a person convicted of "intentional abuse of a child twelve to eighteen years of age that results in the death of the child is guilty of a first degree felony[,]" Section 30-6-1(G); and (3) a person convicted of "intentional abuse of a child less than twelve years of age that results in the death of the child is guilty of a first degree felony resulting in the death of a child[,]" Section 30-6-1(H). Defendant notes that the Legislature chose to explicitly assign the enhanced special basic sentence to intentional child abuse resulting in death of children under twelve years old, and not to impose the enhanced basic sentence for the other two first degree child abuse offenses. Defendant argues that despite this different language, under *Franco*, *Shije*, and *Guerro*, all three of these offenses would receive the enhanced basic sentence "for a first degree felony resulting in the death of a child: life imprisonment."

**{14}**    Defendant misreads *Franco*, *Shije*, and *Guerro*, none of which involved a legislative choice—within a single statute—to explicitly assign enhanced basic sentences to some but not all closely related, but distinct, crimes. Nothing in our precedents requires us to disregard such choices when the Legislature makes them. The Legislature is free to calibrate sentences based on its assessment of the seriousness of offenses, even if those offenses are all of the same degree, and the Legislature has done just that in the context of first degree child abuse. *See* § 30-6-1(F)-(H). But the Legislature did not do so in the statute at issue in Defendant's case. Instead, it simply provided that Defendant's offense, which by definition results in the death of a person, is a third degree felony. *See* § 66-8-101(D). As we have explained, this triggers the enhanced basic sentence for third degree felonies resulting in the death of a person. Nothing about the different approach the Legislature chose to take with respect to child abuse offenses changes our analysis here.[4]

**{15}**    Defendant has not persuaded us that we should overrule our precedents, which are consistent with the plain language of the statutes at issue and which further the purpose of enhanced basic sentences for offenses that result in people's deaths. Those precedents require us to reject Defendant's challenge to his enhanced basic sentence.

## IV.    The District Court Did Not Err in Its Serious Violent Offense Designation

---

4Nor are we persuaded by Defendant's argument based on the statutes defining various offenses involving sexual exploitation of children. Defendant notes that the Legislature has explicitly identified offenses involving child pornography as warranting enhanced basic sentences, but that it has not done so for offenses involving child prostitution. Defendant argues that the Legislature intended for the ordinary basic sentences to apply to the child prostitution offenses. However, Defendant was not convicted of any offense involving the sexual exploitation of children and has not pointed to any analogous distinction between the statutes defining various homicide offenses or other offenses that result in the deaths of human beings.

**{16}**     Defendant challenges the district court's designation of his offense as a serious violent offense pursuant to the EMDA—a designation that significantly reduces the maximum amount of credit against his sentence that he can earn based on good behavior while incarcerated. *See* NMSA 1978, § 33-2-34(A)(1)-(2) (2015) (limiting credit to four days per month for serious violent offenses but allowing credit of up to 30 days per month for other offenses). Specifically, Defendant contends that (A) substantial evidence does not support the district court's findings that Defendant was driving 107 miles per hour at the time of the collision, that he was weaving in and out of traffic, and that he did not use his brakes and (B) the district court's reasons for concluding that his offense is a serious violent offense—his speed, weaving, and failure to brake—are inadequate as a matter of law. We are not persuaded.

**{17}**     It is undisputed that Defendant did not make either of his EMDA arguments in the district court, but the parties disagree about whether preservation is necessary in this context and which standard of review applies. We assume without deciding that the applicable standard of review is our usual one for preserved EMDA arguments and that Defendant need not demonstrate fundamental error. We therefore review the EMDA designation for abuse of discretion. *State v. Lavone*, 2011-NMCA-084, ¶¶ 4-5, 150 N.M. 473, 261 P.3d 1105. A district court abuses its discretion in its determination of whether an offense is a serious violent offense if "its decision is not supported by substantial evidence[,]" *State v. Montoya*, 2005-NMCA-078, ¶ 8, 137 N.M. 713, 114 P.3d 393, or "if it acts contrary to law."[5] *State v. Scurry*, 2007-NMCA-064, ¶ 4, 141 N.M. 591, 158 P.3d 1034. "We review de novo the legal basis for the court's discretionary finding that Defendant's commission of homicide by vehicle was a serious violent offense." *State v. Melendrez*, 2014-NMCA-062, ¶ 35, 326 P.3d 1126. We discuss the factual and legal bases for the serious violent offender designation in turn.

## A.     Substantial Evidence Supports the Serious Violent Offender Findings

**{18}**     The district court made three findings to support its serious violent offense designation. Substantial evidence supports all three.

**{19}**     First, the district court found that Defendant's vehicle was traveling 107 miles per hour at the time of impact. The district court apparently found credible the testimony of Joseph Manning, who the district court recognized as an expert in the field of vehicle crash reconstruction. Manning testified that he calculated the impact speed at 107 miles per hour based on the physical evidence, including the data retrieved from the EDM device in Defendant's vehicle. Other evidence buttresses the district court's finding. Two of the State's exhibits, Exhibits 57 and 58, were graphs based on data retrieved from a device in Defendant's vehicle. Exhibit 57 showed a speed of 106 miles per hour (171 kilometers per hour) five seconds before the side air bags were deployed. Exhibit 58 showed a vehicle speed of 108 miles per hour (175 kilometers per hour) five seconds before the front air bags were deployed. In addition, a photograph admitted into evidence as State's Exhibit 16 depicts Defendant's speedometer, which reads

---

5A district court may also abuse its discretion by making an unreasonable "choice among alternatives," *Lavone*, 2011-NMCA-084, ¶ 5, but Defendant does not argue that the district court abused its discretion in this manner.

approximately 110 miles per hour. Collectively, this evidence provided ample support for the district court's finding. We recognize that Defendant testified that his speed never exceeded 85 miles per hour on the night of the crash, but the district court was free to reject Defendant's testimony and conclude that he was driving significantly faster than he claimed. *See State v. Graham*, 2005-NMSC-004, ¶ 11, 137 N.M. 197, 109 P.3d 285 (stating that an appellate court will not "substitute our judgment for that of the fact[-]finder concerning the credibility of witnesses or the weight to be given their testimony" (internal quotation marks and citation omitted)).

**{20}** Substantial evidence also supported the district court's second finding: that Defendant was weaving through traffic. One eyewitness to the crash testified that he saw Defendant's vehicle "weaving in and out of traffic." Another witness testified that he saw Defendant's car change lanes without signaling between cars at least twice.

**{21}** The district court's third finding—that Defendant did not apply his brakes before the crash—was also based on substantial evidence. State's Exhibit 58, the graph of the front air bag data, indicates that the brakes on Defendant's vehicle were not applied before the accident. In addition, an eyewitness to the accident testified that he did not see light emitting from the brake lights of Defendant's car before the crash.

## B.      The Serious Violent Offense Designation Is Not Legally Inadequate

**{22}** Our final task is to review de novo "whether the district court correctly applied the EMDA during sentencing." *State v. Bravo*, 2006-NMCA-019, ¶ 5, 139 N.M. 93, 128 P.3d 1070. The provision at issue here is in Section 33-2-34(L)(4). Subsections (L)(4)(a) through (L)(4)(n) identify offenses that the Legislature has determined are always serious violent offenses. Defendant's offense, third degree homicide by vehicle, is not one of the per se serious violent offenses. However, his offense is among those that Subsection (L)(4)(o) places in a discretionary category. When an offense falls into this category, a district court may designate it a serious violent offense "when the nature of the offense and the resulting harm are such that the court judges the crime to be a serious violent offense." Section 33-2-34(L)(4)(o). Whether a particular crime is a serious violent offense depends on whether it is "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *Melendrez*, 2014-NMCA-062, ¶ 35 (internal quotation marks and citation omitted).

**{23}** The district court's reasons for its designation satisfy the requirements set in the statute and our precedent. With respect to the physical violence of the offense, the district court found that Defendant was driving at a speed of 107 miles per hour when he struck the vehicle in which Victim was a passenger. The resulting crash was violent enough to eject Victim from the vehicle. This is sufficient to meet the violence requirement under our precedent. *See State v. Solano*, 2009-NMCA-098, ¶ 17, 146 N.M. 831, 215 P.3d 769 ("[The d]efendant recklessly veered across the center line and struck the victim with sufficient force to propel her into the bed of [the d]efendant's truck. These facts directly relate to whether force was used in a violent manner.").

**{24}** Nor do we perceive any legal error in the district court's conclusion that Defendant acted with reckless disregard that his acts were reasonably likely to result in serious harm. *Melendrez*, 2014-NMCA-062, ¶ 35. The district court properly based that conclusion on a combination of Defendant's speed, which the district court found was "excessive and unreasonable," his weaving in and out of traffic, and his failure to apply his brakes before the crash.

**{25}** Defendant relies heavily on *State v. Loretto*, 2006-NMCA-142, ¶ 18, 140 N.M. 705, 147 P.3d 1138, in which we concluded that "[s]omething more than the mere elements in the definition of [the offense] need[s] to be shown to designate the crime as a serious violent offense." Specifically, Defendant argues that weaving and speeding were elements of his offense, and that "there must be something more than speeding and weaving in and out of traffic" to justify a serious violent offense designation. But the findings that the district court made in support of the serious violent offender designation went well beyond what the jury had to find to return a guilty verdict. To convict Defendant under the instructions it received, the jury had to find that the State proved beyond a reasonable doubt that Defendant "drove with willful disregard of the safety of others and at a speed *or* in a manner that endangered or was likely to endanger any person." Because the instruction is framed in the disjunctive, it allowed a conviction based solely on Defendant's excessive speed *or* solely based on other aspects of Defendant's driving. But the district court did not rely on one alternative or the other. It relied on Defendant's speed *and* two other aspects of his driving: weaving through traffic and failing to brake.[6] We therefore conclude that the district court did not run afoul of *Loretto*.

**{26}** Defendant has not persuaded us that the district court's serious violent offense designation suffers from any factual or legal infirmity.

**CONCLUSION**

**{27}** We affirm Defendant's conviction and sentence.

**{28}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**MEGAN P. DUFFY, Judge**

---

6Because the three findings in this case, considered together, adequately support the designation, we need not decide whether any subset of those findings would suffice.