1997–NMCA–027

936 P.2d 869

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Leobardo ALVARADO, Defendant–Appellant.**

**No. 17948.**

Court of Appeals of New Mexico.

March 3, 1997.

Certiorari Denied April 2, 1997.

Tom Udall, Attorney General, Santa Fe, for Appellee.

Anthony James Ayala, Albuquerque, for Appellant.

*OPINION*

DONNELLY, Judge.

1.  Defendant appeals his conviction of voluntary manslaughter, with a firearm enhancement.  Defendant argues on appeal that the imposition of a six-year basic sentence for commission of a third degree felony resulting in the death of a human being violates his right to be free from double jeopardy guaranteed under the United States and New Mexico Constitutions.  This Court's calendar notice proposed summary affirmance, and Defendant has responded with a

memorandum opposing the proposed disposition. Having considered Defendant's arguments, we affirm.

2. Defendant was arrested in connection with the shooting death of his former employer on March 13, 1996. He was charged with first degree murder. Following a jury trial, Defendant was acquitted of murder and convicted of the lesser-included offense of voluntary manslaughter. The jury also found that a firearm was used in the commission of the crime. Following reception of the verdict, Defendant was sentenced to seven years imprisonment, including a one-year additional prison term based upon the mandatory firearm enhancement.

*DISCUSSION*

3. Under NMSA 1978, Section 30–2–3 (Repl.Pamp.1994), manslaughter, the unlawful killing of a human being without malice, is categorized either as voluntary or involuntary. Voluntary manslaughter is defined as "manslaughter committed upon a sudden quarrel or in the heat of passion." Section 30–2–3(A). The latter section also provides: "Whoever commits voluntary manslaughter is guilty of a third degree felony resulting in the death of a human being." *Id.* Under the sentencing statute, NMSA 1978, Section 31–18–15(A)(5) and (E)(4) (Repl.Pamp.1994), a third degree felony is punishable by three years imprisonment and/or a fine not to exceed $5000. However, Section 31–18–15(A)(4) further provides that a basic sentence of *six years* imprisonment shall be imposed where an individual is convicted of a third degree felony "resulting in the death of a human being." *Id.*

4. Defendant argues that the language, "resulting in the death of a human being" contained in both Sections 30–2–3(A) and 31–18–15(A)(4), is redundant, and that when the legislature, in 1994, revised the language of the manslaughter statute and the sentencing statute, it did not intend to add a new element to the crime of manslaughter so as to increase the penalty from three years to six years. Specifically, Defendant contends that the imposition of a three-year sentence under Section 30–2–3(A), and the imposition of an additional three-year sentence under the provisions of Section 31–18–15(A)(4), results in multiple punishment for the same offense and violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article II, Section 15 of the New Mexico Constitution. Although we agree that portions of Sections 30–2–3 and 31–18–15 appear redundant, we disagree that the trial court's imposition of a basic sentence of six years, plus one year additional under the firearm enhancement statute, constitutes double jeopardy.

5. The Double Jeopardy Clause of the federal and state constitutions protects defendants from successive prosecutions for the same offense after conviction or acquittal, and from multiple punishments for the same offense. *State v. Martinez*, 120 N.M. 677, 678, 905 P.2d 715, 716 (1995). In *Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991), our Supreme Court explained that in the multiple punishment context, the double jeopardy protection does no more than prevent the trial court from sentencing a defendant to a greater punishment than the legislature intended.

6. Thus, we turn to the question of what the legislature intended by the language of Sections 30–2–3(A) and 31–18–15 in order to resolve the question of whether Defendant was subjected to multiple punishment. The interpretation or construction of a statute presents a question of law which we review de novo. *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). Where two statutes are related to the same general subject, the court will generally construe them *in pari materia* to give effect to each. *See State v. Sublett*, 78 N.M. 655, 657, 436 P.2d 515, 517 (Ct.App.1968). The primary objective of statutory construction is to look to the object the legislature sought to accomplish and give effect to the intent of the legislature. *Rowell*, 121 N.M. at 114, 908 P.2d at 1382.

7. Applying the above principles to the issue before us, we think it is clear that the legislative intent in amending Sections 30–2–3 and 31–18–15 was to increase the term of imprisonment for individuals convicted of voluntary manslaughter from three years to six

years, not to impose multiple punishments. We arrive at the legislative intent by comparing the statutory sentencing scheme before and after the 1994 amendments.

8. Prior to 1994, most criminal offenses in New Mexico were categorized as first, second, third, and fourth degree felonies with penalties of eighteen years, nine years, three years, and one and one-half years, respectively. NMSA 1978 § 31–18–15(A) (Cum. Supp.1993). Before the 1994 amendment, first degree murder was a capital felony, NMSA 1978, § 30–2–1(A) (Repl.Pamp.1984), and the sentence for first degree murder was either death or life imprisonment, NMSA 1978, § 31–18–14 (Cum.Supp.1993). Under Section 31–21–10(A), an individual sentenced to life imprisonment is not eligible to be released on parole until he has served "thirty years of his sentence." NMSA 1978, § 31–21–10(A) (Repl.Pamp.1990). Thus, prior to 1994, if the death penalty was not involved, the basic penalties for first degree murder, second degree murder, voluntary manslaughter, and involuntary manslaughter were life imprisonment, nine years, three years, and one and one-half years, respectively. *See* NMSA 1978, §§ 30–2–1, 30–2–3 (Repl. Pamp.1984); § 31–18–15(A) (Cum.Supp. 1993); § 31–21–10(A) (Repl.Pamp.1990); and § 31–18–14 (Cum.Supp.1993). It is apparent that, prior to the 1994 amendment, there was a large gap between a sentence for life imprisonment for first degree murder, where the death penalty was not involved, and a sentence of nine years for second degree murder.

9. Under the 1994 amendment, the legislature substantially modified Sections 30–2–1(B) (second degree murder), 30–2–3(A) (voluntary manslaughter), and 31–18–15(A) (sentencing authority). 1994 N.M.Laws, ch. 23, §§ 1–3. The title of the 1994 enactment states: "An Act Relating to Criminal Law; Increasing Criminal Penalties for Felonies Resulting in the Death of a Human Being; Amending Sections of the NMSA 1978." *Id.* The 1994 enactment defined second degree murder as a second degree felony resulting in the death of a human being, NMSA 1978, § 30–2–1(B) (Repl.Pamp.1994), defined voluntary manslaughter as a third degree felony

resulting in the death of a human being, § 30–2–3(A) (Repl.Pamp.1994), and provided penalties therefor of fifteen years and six years, respectively, § 31–18–15(A) (Repl. Pamp.1994). Thus, after 1994, if the death penalty is not involved, the basic sentences for the various degrees of homicide are sentences of not less than thirty years for first degree murder, fifteen years for second degree murder, six years for voluntary manslaughter, and one and one-half years for involuntary manslaughter.

10. To accomplish the express legislative goal of increasing the sentences for second degree murder and voluntary manslaughter and the implicit goal of making the penalties in the series more uniform, the legislature undoubtedly could have chosen from myriad ways of expressing itself. The fact that it chose a method that appeared to use redundant wording may have reflected an economy of language, considering all the possibilities. Nevertheless, the legislative purpose was clear.

11. In sum, the amendment increasing the penalty for voluntary manslaughter did not subject Defendant to multiple punishments; instead, Defendant received the basic sentence provided by Section 31–18–15(A)(4). Similarly, the imposition of an additional one year firearm enhancement to Defendant's basic sentence did not result in Defendant receiving multiple punishments, only an enhanced sentence. *See State v. Charlton,* 115 N.M. 35, 39–41, 846 P.2d 341, 345–47 (Ct. App.1992) (upholding firearm sentencing enhancement statute against double jeopardy claim).

*CONCLUSION*

12. For the reasons set forth herein, and in this Court's calendar notice, we affirm Defendant's sentence for voluntary manslaughter committed with a firearm.

13. IT IS SO ORDERED.

PICKARD and ARMIJO, JJ., concur.