Certiorari Denied, August 1, 2016, No. S-1-SC-35986

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:    2016-NMCA-074

Filing Date:  June 14, 2016

Docket No. 33,392

STATE OF NEW MEXICO,

     Plaintiff-Appellee,

v.

CHRISTOPHER FRANCO,

     Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Kenneth H. Martinez, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
Steven H. Johnston, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J. K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**BUSTAMANTE, Judge.**

**{1}**    This case and this Defendant have been before this Court before. This second appeal raises procedural and substantive issues flowing from our double jeopardy jurisprudence. The procedural question boils down to whether Defendant can even pursue a second appeal. The substantive question is whether Defendant can be sentenced under NMSA 1978, Section

1

31-18-15(A)(4) (2007, amended 2016), following his conviction under NMSA 1978, Section 30-3-8(B) (1993), for shooting at a motor vehicle when the shooting resulted in a death. We conclude that Defendant has a right to appeal, and we affirm the sentence.

**BACKGROUND**

**{2}** In July 2007 Christopher Franco (Defendant) shot and killed William Healy during an abortive drug transaction. The shooting occurred outside Defendant's apartment as Healy drove his pickup truck in reverse at a high rate of speed toward Defendant. Defendant was convicted of voluntary manslaughter, shooting at a motor vehicle resulting in great bodily harm (death), aggravated assault, and tampering with evidence. Defendant was sentenced to eleven years of incarceration for the voluntary manslaughter conviction, which included a six-year basic sentence, a one-year firearm enhancement, and a four-year habitual offender enhancement. In addition, he was sentenced to nineteen years of incarceration for the shooting at a motor vehicle conviction, consisting of a fifteen-year basic sentence and a four-year habitual offender enhancement. The nineteen-year sentence was ordered to be served consecutive to the eleven-year manslaughter sentence.

**{3}** Defendant appealed his convictions and sentences arguing in part that they violated double jeopardy in two respects: (1) the shooting at a motor vehicle and voluntary manslaughter charges should be merged; or (2) the shooting at a motor vehicle sentence should not have been enhanced. Our initial calendar notice proposed to hold that there was no difference between the two theories. The idea that there were two double jeopardy aspects to Defendant's case was never brought up again in his first appeal.

**{4}** Relying on *State v. Dominguez*, 2005-NMSC-001, ¶¶ 5-16, 137 N.M. 1, 106 P.3d 563, we summarily affirmed Defendant's convictions and sentencing. *State v. Franco* (*Franco I*), No. 30,028, mem. op. (N.M. Ct. App. Sept. 1, 2010) (non-precedential). The Supreme Court granted certiorari in Defendant's case and in a companion case to review whether the ruling in *Dominguez* should be retained. On certiorari the Supreme Court only considered the question whether convicting Defendant of both voluntary manslaughter and shooting at a motor vehicle violated double jeopardy. *State v. Franco* (*Franco II*), No. 32,605, order ¶ 5 (N.M. Sup. Ct. June 10, 2013) (non-precedential). Relying on the companion case of *State v. Montoya*, 2013-NMSC-020, 306 P.3d 426, in which *Dominguez* was overruled, the Supreme Court concluded that it did, and vacated Defendant's conviction for voluntary manslaughter. *Franco II*, No. 32,605, order ¶ 5; *Montoya*, 2013-NMSC-020, ¶¶ 54-56 (vacating the voluntary manslaughter conviction because it carried the shorter sentence: six years for a third degree felony resulting in death versus fifteen years for a second degree felony resulting in death).

**{5}** On remand, the district court held a new sentencing hearing and entered an amended judgment and sentence reflecting another sentence of fifteen years for the shooting at a motor vehicle conviction. At the hearing, Defendant posed no objection to the new sentence. The amended sentence was entered on October 30, 2013. A notice of appeal was filed on

December 6, 2013.

**{6}**     Our review of all of the issues presented is de novo. *See State v. Chavarria*, 2009-NMSC-020, ¶ 11, 146 N.M. 251, 208 P.3d 896.

## APPEALABILITY

**{7}**     The State questions whether the appeal "is . . . properly before this Court for procedural reasons and because [we] should apply the law of the case doctrine." The State offers a melange of rationales why this appeal is not properly before us. First, the State notes that the notice of appeal was filed late and argues that we should not apply the presumption of ineffective assistance of counsel recognized in *State v. Duran*, 1986-NMCA-125, ¶ 10, 105 N.M. 231, 731 P.2d 374, because Defendant has no right to a second appeal. The State suggests that Defendant is better left to a habeas corpus proceeding. The State also asserts that the law of the case doctrine counsels that we should decline to accept the appeal. We disagree.

**{8}**     We start our analysis by considering the nature and strength of the right to be free from double jeopardy. First, it is a right of explicit constitutional dimension. New Mexico Constitution Article II, Section 15 provides, in pertinent part, that "any person [shall not] be twice put in jeopardy for the same offense[.]" Second, the Legislature has provided that "[t]he defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment." NMSA 1978, § 30-1-10 (1963). Based on the wording of Section 30-1-10, our Supreme Court has held that a defendant can assert a double jeopardy defense even when he has pled guilty to the challenged offense and has failed to reserve the issue in his plea. *State v. Nunez*, 2000-NMSC-013, ¶ 99, 129 N.M. 63, 2 P.3d 264; *see State v. Handa*, 1995-NMCA-042, ¶¶ 8-9, 17, 120 N.M. 38, 897 P.2d 225.

**{9}**     Perhaps most apropos to the factual scenario we see here is *State v. Breit*, 1996-NMSC-067, 122 N.M. 655, 930 P.2d 792. In *Breit*, the Supreme Court held in a second appeal that the defendant could not be retried for murder when the district court had granted a new trial based on extreme prosecutorial misconduct. *Id.* ¶ 1. Before getting to the merits of the claim, however, the Supreme Court had to address the fact that the same issue had been squarely decided against the defendant in a prior appeal. *Id.* ¶¶ 10-12.

**{10}**     After the district court granted the new trial, the defendant moved for dismissal of all charges on double jeopardy grounds. *Id.* ¶¶ 5-6. The district court granted the motion. The state appealed the dismissal of the charges and this Court reversed, concluding that a new trial would not pose a double jeopardy violation. *Id.* The defendant in *Breit* asked the Supreme Court to review the Court of Appeals' decision but the Supreme Court denied certiorari. *Id.* On remand, *Breit* was convicted in a second trial and sentenced to life imprisonment. *Id.* ¶ 7. *Breit* appealed again asserting double jeopardy. *See id.*

3

**{11}** Based on this procedural history, the state argued that the law of the case doctrine prevented the Supreme Court from addressing the issue in the second appeal. The Supreme Court disposed of the argument quickly, first by citing to Section 30-1-10 (quoted above) and then by noting that "[t]he right to be protected from double jeopardy is so fundamental, that it cannot be relinquished even if a conviction is affirmed on appeal." *Breit*, 1996-NMSC-067, ¶ 11. The State in the case at hand agrees with this observation.

**{12}** Furthermore, the Court noted, while the law of the case doctrine is an important prudential policy, it is not inflexible and in the end is a discretionary matter. *Id.* ¶ 12. The State recognizes that as such law of the case is not a procedural bar to our jurisdiction.

**{13}** This authority counsels against use of the doctrine to preclude the appeal here. While Defendant hinted in his first appeal at the double jeopardy theory he advances now, it was certainly not decided by this Court or the Supreme Court. Even if the issue had been decided previously, *Breit* teaches that a second appeal, with perhaps better arguments, should be allowed. Further, there is nothing in the record that can be used to argue that Defendant intentionally waived or abandoned the argument. The State admits as much.

**{14}** The State notes that in *State v. Brown*, 2003-NMCA-110, 134 N.M. 356, 76 P.3d 1113, this Court apparently relied on the law of the case doctrine to refuse to consider a challenge to an assertedly improper double enhancement of the defendant's sentence in a drug trafficking case because he had not made the argument in his first appeal. *Id.* ¶¶ 7-8. We refuse to follow *Brown* in this regard, as it includes no discussion of double jeopardy law or the implications of its approach vis à vis double jeopardy. As such, *Brown* is suspect as authority on the proper application of law of the case in cases involving double jeopardy claims.

**{15}** The strength of double jeopardy protections also leads us to disagree that Defendant should be relegated to habeas corpus proceedings for his remedy. The State's theory is that requiring Defendant to pursue a habeas petition would promote judicial efficiency. While that might be true in the most general sense—in particular when further fact finding is necessary—we disagree that any efficiencies would be gained in this case. There are no facts to be found here. We are presented with a purely legal question. We see nothing to be gained by requiring a district court to consider the case only to be followed by an appeal presenting the exact issues before us now. *Varela v. State*, 1993-NMSC-030, ¶ 5, 115 N.M. 586, 855 P.2d 1050 (stating that a habeas proceeding, while supportable under the facts, was not efficient when the legal question was already before the Court).

**{16}** The foregoing discussion leads us to conclude that Defendant indeed has a right to this second appeal on an undecided double jeopardy issue. As such there is no reason not to apply the *Duran* presumption in his favor and entertain the appeal despite the late notice of appeal. We so hold.

**DOUBLE JEOPARDY**

**{17}** Defendant's double jeopardy argument is straightforward. He asserts that he is being punished twice for a single death: first, when the death was used to satisfy the great bodily harm element of his shooting at a motor vehicle conviction, thus elevating that crime to a second degree felony pursuant to Section 30-3-8(B); and second, when the death was used to impose a fifteen-year sentence pursuant to Section 31-18-15(A)(4). Defendant argues that he should have received a nine-year sentence under Section 31-18-15(A)(6), now codified at Section 31-18-15(A)(7) (2016), the basic sentencing provision for second degree felonies *not* involving a death because the death was already taken into account for punishment purposes when it was used to define the crime as a second degree felony. Analogizing to cases such as *State v. Keith*, 1985-NMCA-012, 102 N.M. 462, 697 P.2d 145, and *State v. Haddenham*, 1990-NMCA-048, 110 N.M. 149, 793 P.2d 279, Defendant asserts that having used the death to "enhance" the crime, the State cannot then also use the death to enhance the sentence imposed.

**{18}** As we will explain, we disagree with Defendant's assessment of how these statutes were intended to be applied. We conclude that Section 31-18-15(A)(4) was intended to be the basic sentence applicable to all second degree felonies that result in the death of a human being.

**{19}** In this case, we are concerned with that aspect of double jeopardy that protects against multiple punishments. *See Swafford v. State*, 1991-NMSC-043, ¶¶ 6-7, 112 N.M. 3, 810 P.2d 1223. And, in the context of the claim asserted by Defendant, we are concerned with a particular subset of the multiple punishment construct that addresses the double use of the same facts or circumstances—such as a prior conviction—to prove a predicate offense and thereafter to enhance sentencing. *State v. Lacey*, 2002-NMCA-032, ¶¶ 12, 15, 131 N.M. 684, 41 P.3d 952 (holding that a prior trafficking conviction could not be used both to prove the offense of conspiracy to commit a first degree felony and to enhance the defendant's conspiracy sentence under the habitual offender statute).

**{20}** As such, we are not presented with the more typical double description or unit of prosecution theories.[1] This case does not raise the issues common to multiple conviction cases. Here we have one conviction and one sentence. As a consequence, we need not engage in the *Blockburger* analysis common to cases such as *Montoya*. 2013-NMSC-020, ¶¶ 30-34, 46-47; *Swafford*, 1991-NMSC-043, ¶ 10 (describing the *Blockburger* test); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). To do so would be futile; the legal equivalent of trying to fit a square peg in a round hole. Our opinion in *State v. Franklin*, 1993-NMCA-135, 116 N.M. 565, 865 P.2d 1209—on which Defendant heavily relies—is emblematic of the difficulties inherent in such an effort.

**{21}** Unburdened by the need to undertake a *Blockburger* analysis, we are left with a

---

[1]*Montoya*, 2013-NMSC-020—which resulted in the vacatur of Defendant's conviction for voluntary manslaughter is a typical double description scenario.

discrete issue: Is Section 31-18-15(A)(4) the correct sentencing provision for convictions under Section 30-3-8(B) when shooting at a motor vehicle results in a death? We conclude that it is because the Legislature intended Section 31-18-15(A)(4) to be the basic sentence applicable to *all* second degree felonies resulting in deaths.[2]

**{22}**    We start with the language of Section 31-18-15 and its history with the aim of deciphering the objective the Legislature sought to accomplish and give effect to it. Sentencing authority for the category of second degree felonies resulting in death was first enacted in 1994. *Compare* 1994 N.M. Laws, ch. 23, § 3, *with* 1993 N.M. Laws, ch. 182, § 1, *and* § 31-18-15. The amendments had the effect of closing the large gap between life imprisonment for first degree murder, *see* NMSA 1978, § 30-2-1(A) (1994); NMSA 1978, § 31-18-14 (1993, amended 2009) and the then-standard sentence of nine years for second degree murder. *Compare* 1994 N.M. Laws, ch. 23, § 3, *with* 1993 N.M. Laws, ch. 182, § 1; *see* § 30-2-1(B). The same 1994 enactment amended the definition of "second degree murder" to provide that "[w]hoever commits murder in the second degree is guilty of a second degree felony resulting in the death of a human being." 1994 N.M. Laws, ch. 23, § 1; *see* § 30-2-1(B). The criminal definition thus mirrored the sentencing provisions after the amendments to Section 31-18-15(A).

**{23}**    Similar amendments to the voluntary manslaughter provisions were enacted in the same law. 1994 N.M. Laws, ch. 23, § 2; *see* NMSA 1978, § 30-2-3(A) (1994).  The amendments defined "voluntary manslaughter" as a "third degree felony resulting in the death of a human being." 1994 N.M. Laws, ch. 23, § 2; *see* § 30-2-3(A). The sentencing provision was amended to increase the penalty for voluntary manslaughter to six years, mirroring the "third degree felony resulting in the death of a human being" language of the crime definition. *Compare* 1994 N.M. Laws, ch. 23, § 3, *and* § 30-2-3(A) *with* 1993 N.M. Laws, ch. 182, § 1.

**{24}**    After the amendments described above, this Court considered a double jeopardy challenge to application of the greater sentence for voluntary manslaughter. *State v. Alvarado*, 1997-NMCA-027, ¶ 4, 123 N.M. 187, 936 P.2d 869. The defendant in *Alvarado* argued that the redundancy of the language in the crime definition and in the sentencing provision violated double jeopardy because it effectively imposed a three-year sentence under the definition and then added an additional three years under the sentencing provision. *Id.* We rejected the argument, concluding that the express legislative goal of increasing sentences for second degree murder and voluntary manslaughter was clear and that the Legislature's choice to "use redundant [language] may have reflected an economy of

---

[2]In *State v. Varela*, 1999-NMSC-045, ¶ 14, 128 N.M. 454, 993 P.2d 1280, our Supreme Court made clear that a shooting resulting in a death could properly be prosecuted under the language of Section 30-3-8, as amended in 1993. Thus, a conviction under Section 30-3-8 can be a second degree felony involving, or resulting in the death of a human being in the practical, everyday sense of the words.

6

language, considering all the possibilities" and did not detract from that clear purpose. *Id.* ¶ 10.

**{25}** We recognize that *Alvarado* by itself does not resolve whether Section 31-18-15(A)(4) applies generally to crimes other than murder and involuntary manslaughter. The broader message of *Alvarado* is that the 1994 amendments were designed to increase the penalty for crimes involving the death of a human being. The question now is whether that message is broad enough to reach crimes not specifically addressed in the 1994 amendments.

**{26}** That question could have been answered in the negative in 1994. 1994 N.M. Laws, ch. 23, § 3(B) of the amending law provided:

> B.      The appropriate basic sentence of imprisonment shall be imposed upon a person convicted of a first, second, third[,] or fourth degree felony or a second or third degree felony resulting in the death of a human being, unless the court alters such sentence[s] pursuant to the provisions of [NMSA 1978, Sections] 31-18-15.1, 31-18-16, 31-18-16.1[,] or 31-18-17.

The specific reference to "second or third degree felony resulting in the death of a human being" could be read to refer to the specific changes made in that enactment.

**{27}** The argument cannot be made at this point because in 2003 the Legislature amended the section to read as follows:

> B.      The appropriate basic sentence of imprisonment shall be imposed upon a person convicted and sentenced pursuant to Subsection A of this section, unless the court alters the sentence pursuant to the provisions of Section[s] 31-18-15.1, 31-18-16, 31-18-16.1[,] or 31-18-17.

2003 N.M. Laws, ch. 1, § 5 (1st Spec. Sess.); *see* § 31-18-15(B).

**{28}** The much more general language of the 2003 amendment undercuts any argument that Section 31-18-15(A)(4) can only be used in conjunction with the crimes of murder and voluntary manslaughter. Rather, given its clear language, the provision should be applied whenever a second degree felony involves a death. This amendment made clear that Section 31-18-15(A)(4) is the "basic" sentence for all second degree felonies resulting in a death.

**{29}** Our case law has broadly applied Section 31-18-15(A)(4)—and 15(A)(6), now codified at Section 31-18-15(A)(7) —as basic sentences for crimes involving death of a human being, though we recognize that the prior cases have not involved double jeopardy claims. In *State v. Shije*, 1998-NMCA-102, ¶¶ 6-7, 125 N.M. 581, 964 P.2d 142, the defendant was convicted of conspiracy to commit first degree murder, a second degree felony, as well as second degree murder. *Id.* ¶ 3. He was sentenced to fifteen years for the murder conviction and for the conspiracy conviction pursuant to Section 31-18-15(A)(4)

[then codified as Section 31-18-15(A)(2)]. *See Shije*, 1998-NMCA-102, ¶ 4. He appealed only the fifteen-year sentence for the conspiracy. *Id.* ¶ 1. We rejected his argument that, as an initiatory crime, a conspiracy could not by definition "result" in a death, pointing out that the word "resulting" clearly could reach any crime that in any way led to a death. *Id.* ¶ 6. We also rejected the argument that the 1994 amendments were limited to homicide crimes. *Id.* ¶¶ 8-9.

**{30}** In *State v. Guerro*, 1999-NMCA-026, ¶¶ 1, 10-11, 126 N.M. 699, 974 P.2d 669, the defendant pled guilty to five counts of homicide by vehicle, NMSA 1978, § 66-8-101(A), (C) (2004), as well as other crimes all flowing from an automobile crash caused by his intoxication. Homicide by vehicle is categorized as a third degree felony. Section 66-8-101(C). After being advised by district court that the potential sentence was six years for each count of homicide by vehicle (thirty years), Defendant entered a no-contest plea and was sentenced to fifteen years of incarceration, the maximum permitted by the plea agreement. *Guerro*, 1999-NMCA-026, ¶¶ 5, 7; *see* § 31-18-15(A)(4) (1994) (now codified as § 31-18-15(A)(8) (2016)). He moved to withdraw his plea asserting that he was misinformed about the maximum sentence he could receive. *Guerro*, 1999-NMCA-026, ¶¶ 8-9. The defendant argued that he should have been sentenced under the generic third degree felony provision—providing for three years per count—because the homicide by vehicle statute did not include the "resulting in death" language. Citing *Shije*, we held that the 1994 amendments—intended as they were to deter "any crimes that result in people's deaths"—were not limited to homicide crimes found in the Criminal Code. *Guerro*, 1999-NMCA-026, ¶ 11; *see State v. McDonald*, 2004-NMSC-033, ¶¶ 7, 18, 136 N.M. 417, 99 P.3d 667 (observing that "the [L]egislature has chosen one basic sentence for generic second and third degree felonies, and a different basic sentence with a greater penalty when an additional fact is found: a crime 'resulting in death' ").

**{31}** Again, we are fully aware that *Shije*, *Guerro*, and *McDonald* did not involve double jeopardy issues. But that does not make them irrelevant in this context. Double jeopardy protections apply insofar as the Legislature has not acted to impose multiple punishments. *Swafford*, 1991-NMSC-043, ¶ 7. Where the Legislature acts in a clear manner, courts are bound to follow its direction unless its command is unconstitutional. Three cases have now opined that Section 31-18-15(A)(4) is the proper basic sentencing provision for second degree felonies resulting in death. Double jeopardy concerns do not alter that conclusion.

**{32}** In particular, we conclude that the rule of lenity does not require a different result. Double jeopardy does no more than prevent the sentencing court from imposing greater punishment than the Legislature intended. *Swafford*, 1991-NMSC-043, ¶ 7. The presumption of lenity arises only after the language, structure, and legislative history of the statutes fail to provide a clear answer. *Id.* ¶ 15. Here, we see no lack of clarity. The language of Section 30-3-8(B) applies on its face to this crime. Death is a recognized basis for prosecution under Section 30-3-8(B). A death occurred as a result of Defendant's actions that fit the crime's definition. And, Section 31-18-15(A)(4) fits the crime committed for sentencing purposes because the crime resulted "in the death of a human being." The end result is one crime,

punished one time. Double jeopardy principles require no more.

**{33}** On the surface *Keith*, *Haddenham*, *Franklin*, and *Lacey* seem to support Defendant's position. *Lacey*'s statement that "multiple use of the same facts to prove a predicate offense and to enhance the sentence is precluded by double jeopardy," *Lacey*, 2002-NMCA-032, ¶ 12, echoes Defendant's assertion about the double use of the death here. There is an important distinction, however, between all of these cases and Defendant's situation. Defendant has been given the basic sentence for one crime. In contrast, each of those cases involve true sentence enhancements. That is, in each, the defendant received the basic sentence for his crime and then additional punishment was imposed under separate provisions of the sentencing statutes. In *Keith*, a prior armed robbery conviction was used to elevate his second armed robbery conviction to a first degree felony. 1985-NMCA-012, ¶ 1. He received the basic sentence for a first degree felony and then the State used the same first armed robbery conviction to argue for imposition of an habitual offender sentence. *Id.* In *Haddenham*, a prior felony was used to convict the defendant of being a felon in possession of a firearm. 1990-NMCA-048, ¶ 3. Again, he received the basic sentence for the crime, and then he received a habitual offender enhancement based on the same prior felony. *Id.* In *Franklin*, the defendant was charged with involuntary manslaughter by negligent use of a firearm. 1993-NMCA-135, ¶ 2. The state sought to pursue a firearm enhancement of the basic sentence for the crime charged. *Id.* And in *Lacey*, 2001-NMCA-684, ¶¶ 3-4, the defendant was convicted of a first degree felony based on a prior trafficking conviction. Absent the prior trafficking conviction, he could only have been charged with a second degree felony. *Id.* ¶ 4. The district court then used the same prior conviction (along with two others) to impose the maximum habitual offender sentence. *Id.*

**{34}** Defendant fails to acknowledge that imposition of an enhanced sentence over and above the basic sentence for a crime is simply different than imposing a basic sentence based on the elements of a crime as defined. Here, Defendant has now received the appropriate basic sentence.

**CONCLUSION**

**{35}** Defendant's sentence is affirmed.

**{36}** **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

9

_____
**JONATHAN B. SUTIN, Judge**