This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: February 20, 2020**

**No. S-1-SC-36782**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**WILLIAM YORK,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett Loveless, District Judge**

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**VIGIL, Justice.**

**{1}** In this direct appeal, Defendant William York asks this Court to reverse his convictions of first-degree murder and conspiracy to commit first-degree murder. Broadly, Defendant argues that the State failed to present sufficient evidence to sustain his convictions. In addition, Defendant asserts that the district court erred in admitting his co-defendant's alleged out-of-court accusation against him, admitting certain evidence of his drug use, excluding evidence of his co-defendant's guilty plea,

instructing the jury on accomplice liability, and sentencing him in violation of the principles of double jeopardy. For the following reasons, we reject Defendant's arguments and affirm his convictions and sentences.

## I.      Background

{2}      Defendant was convicted of first-degree murder, conspiracy to commit first-degree murder, and tampering with evidence. The events leading to the murder center on a dispute between Steve Maliq Swayne and Cory Coyner (Victim). The evidence showed that Defendant conspired with Swayne to kill Victim at Michele Freer's apartment. Both Swayne and Freer were indicted on counts of first-degree murder and pleaded to various crimes associated with the killing. Of the trio, only Defendant went to trial. The evidence tells the following story.

{3}      Swayne was a drug dealer whose customers included Victim, Defendant, and Freer. According to the testimony of Victim's fiancé, there was a dispute between Swayne and Victim over a debt Swayne owed Victim. When Swayne failed to repay the debt, Victim stole a set of Swayne's guns.

{4}      On the morning of the killing, Defendant and Swayne were at Freer's apartment. Victim stopped by the apartment to speak with Swayne and buy drugs for his friend, Nicole Chavez. According to Defendant, after Victim arrived, Swayne pulled Defendant into a bedroom and explained that Victim was the one who had stolen from him. Swayne then gave Defendant a gun and told him to accompany Victim on a drug deal. Freer testified that she heard Swayne tell Defendant, "You got this" or "You got it." Before leaving for the drug deal, Defendant pulled out the gun, fired in the direction of Victim's feet, and said, "You don't mess with my boy. You don't fuck with my friends." Defendant and Victim then left the apartment and joined Chavez, who was waiting for Victim in his truck.

{5}      According to Chavez, Victim drove to a motel where he needed to "pick up something" for Swayne. Once Victim exited the vehicle, Defendant turned to Chavez and told her that he "didn't keep any witnesses." When Victim returned to the truck, Chavez noticed that Defendant had a gun in his lap. Defendant told police that he warned Victim not to do anything stupid and told him that if he did, Defendant would "put one in [him] real quick[.]" Chavez testified that on the way back to Freer's apartment, Defendant called Swayne and told him, "I have him in the car. Are you ready to do this now?"

{6}      According to Freer, when Victim and Defendant returned to her apartment Victim seemed "worried" and Defendant was "[p]hysically spastic." Freer testified that Defendant was aggravated and kept saying how much he liked Victim's truck. Victim asked Defendant not to take his truck, apologized to Swayne for stealing from him, and told the group that he was going to start school and start a new life. After Victim apologized, Freer noticed Swayne and Defendant make "noticeable" eye contact. She called the eye contact "an acknowledgement."

**{7}** Freer testified that Victim then asked to use the restroom, and Defendant followed behind him. Moments later, Freer heard a gunshot and Defendant returned from the bathroom demanding that everyone leave immediately and saying, "He's gone, let's go." Swayne responded, "Dude, dude, now?" Defendant, Swayne, and Freer left the apartment, piled into Victim's truck, and Defendant drove the group away.

**{8}** The jury convicted Defendant of first-degree, willful and deliberate murder, contrary to NMSA 1978, Section 30-2-1(A)(1) (1994); conspiracy to commit first-degree murder, contrary to NMSA 1978, Section 30-28-2 (1979); and tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003). Defendant appeals his convictions of first-degree murder and conspiracy to commit first-degree murder pursuant to this Court's jurisdiction under Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA. As the questions of law presented in this appeal are sufficiently answered by New Mexico precedent, we exercise our discretion under Rule 12-405(B)(1) NMRA to explain our conclusions by way of this non-precedential decision.

## II.    Discussion

**{9}** Defendant makes a number of arguments on appeal. We first address his claims that the district court erred when it (A) admitted a statement allegedly made by his co-defendant in violation of Defendant's rights under the Confrontation Clause; (B) admitted Defendant's police interview over objection that it was irrelevant and more prejudicial than probative; (C) excluded evidence that his co-defendant pleaded guilty to second-degree murder for the death of Victim; (D) instructed the jury on accomplice liability absent evidence to support an accomplice theory; and (E) "enhanced" Defendant's sentence for a crime resulting in the death of a human being in violation of his rights under the Double Jeopardy Clause. We then address Defendant's argument that the State failed to present sufficient evidence to support his convictions. In accordance with the applicable legal standards of review, our examination of the proceedings and evidence presented at trial leads us to reject Defendant's arguments on appeal and affirm his convictions and sentences.

## A.    Confrontation Clause

**{10}** We turn first to Defendant's argument under the Confrontation Clause. The Confrontation Clause of the Sixth Amendment of the United States Constitution "bars the 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *State v. Lopez*, 2007-NMSC-037, ¶ 19, 142 N.M. 138, 164 P.3d 19 (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)). Defendant asserts that his confrontation rights were violated when he was unable to cross-examine Swayne, his co-defendant, about what Swayne apparently told an investigating police officer about the murder.

**{11}** In order to assess whether the admission of Swayne's apparent statement to police violated Defendant's confrontation rights, we must unpack a question asked by

Officer Joshua Brown when he interviewed Defendant following the murder. The State introduced a redacted recording of that interview into evidence during Officer Brown's testimony. In the interview, Officer Brown asked, "[W]hy would they tell me that you were the trigger man?" Defendant's answer inferred that the term "they" in Officer Brown's question referred to Swayne and Freer. By asking why "they [would] tell me you were the trigger man," Officer Brown was implicitly saying that Swayne and Freer accused Defendant of the murder. Defendant argues that this implicit accusation was an out-of-court statement by a witness who did not testify (Swayne). Therefore, Defendant claims the admission of Officer Brown's question violated his right to confront Swayne at trial.

{12}   We review claimed violations of the Sixth Amendment right to confrontation de novo. *State v. Tollardo*, 2012-NMSC-008, ¶ 15, 275 P.3d 110. Because Defendant failed to adequately preserve this issue at trial, we review for fundamental error. *See State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633.

1.      **Preservation**

{13}   Defendant did not preserve his argument under the Confrontation Clause because he failed to object specifically to the admission of Officer Brown's triggerman question on confrontation grounds. "In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (internal quotation marks and citation omitted); *see also* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). At no point during the trial in this case did Defendant object to the particular portion of the interview when Officer Brown asked why "they" had called Defendant the trigger man. Instead, Defendant raised only general objections to the admission of the entire recorded interview, and he did so on three occasions.

{14}   Defendant's first general objection came the day before the jury heard the recorded police interview. Defendant objected to the admission of the recording on hearsay grounds related to "probably like [twenty] or more statements" throughout the interview, including double hearsay within the officers' questions. The district court reviewed the interview recording and identified several issues from the bench, including a potential violation of the right of confrontation. Specifically with respect to the triggerman question, the district court noted that the term "they" presumably referred to Swayne and Freer and that because Swayne did not testify, admission of this portion of the interview "would arise to a [C]onfrontation [C]lause problem." The district court then sustained Defendant's objection to the admission of the interview recording in the form it was initially presented by the State.

{15}   The State then asked the district court if it could introduce a version of the interview that would "exclude those statements that the Court ha[d] found objectionable or otherwise inadmissible." To accommodate this request, the district court ordered the

parties to review a transcript of the interview together during a recess and stipulate to those portions of the interview they deemed to be admissible. The district court then directed the parties to make specific objections to any portions of the interview that remained in dispute. The district court explicitly instructed the parties to go line by line through the transcript of the recording and then "actually point to me what exactly I'm deciding."

**{16}** When the district court returned from recess, the State reported that the parties were unable to agree on admissibility. Although the district court had given Defendant ample opportunity to formulate specific objections to particular lines of the interview transcript, Defendant did not raise an objection to the triggerman question at this time. Rather, Defendant raised a second general objection on the basis that "there are some pages [where the officer] starts discussing what Swayne said, which is hearsay and confrontation. There's a lot of 'they,' as the Court noted in some of that, also." Acknowledging that the parties were at an impasse, the district court decided to go through the transcript of the interview on its own and "mark up" and "highlight what's in, what's out." The district court said it would do so with the general objections in mind, including hearsay and "some confrontation mixed in there."

**{17}** Before the jury was brought in the next day, the district court presented its marked-up version of the interview transcript revealing the necessary redactions based on Defendant's general objections, and it reminded the parties that it had pressed them for "specific objections as to particular portions." The district court's marked-up transcript was then used to redact the interview recording based on what the court determined to be inadmissible.

**{18}** After the redaction was completed, Defendant made his final general objection to the admission of the recorded interview but again failed to raise a specific objection that the triggerman question violated his rights under the Confrontation Clause. Ultimately, the triggerman question was played for the jury, and Defendant did not object.

**{19}** Despite being given several opportunities by the district court, Defendant failed to specifically object to the triggerman question as a violation of his rights under the Confrontation Clause. It is incumbent upon the parties to direct the district court to specific objections, rather than relying on the district court to identify on its own what parties may find objectionable. Because Defendant failed to make a specific objection to the triggerman question he challenges before us now, we conclude that he failed to preserve this issue. Since the issue was not preserved, we review Defendant's claimed violation of his confrontation rights for fundamental error. *See Barber*, 2004-NMSC-019, ¶ 8.

## 2. Admission of the triggerman question was not fundamental error

**{20}** In reviewing the admission of the triggerman question for fundamental error under the Confrontation Clause, "we first determine if error occurred; if so, we next determine whether that error was fundamental." *State v. Astorga*, 2015-NMSC-007, ¶

14, 343 P.3d 1245 (internal quotation marks and citation omitted). To implicate the Confrontation Clause, the out-of-court statement at issue must be "both testimonial and offered to prove the truth of the matter asserted." *State v. Navarette*, 2013-NMSC-003, ¶ 7, 294 P.3d 435. Statements of a co-defendant "elicited by police officers investigating [a crime] are testimonial." *State v. Lopez*, 2007-NMSC-049, ¶ 14, 142 N.M. 613, 168 P.3d 743.

**{21}** Defendant argues that his rights under the Confrontation Clause were violated by the admission of the triggerman question because he was unable to cross-examine Swayne regarding his apparent out-of-court accusation to police that Defendant killed Victim. The State does not directly rebut Defendant's claim of error but instead asserts that any error in the admission of the triggerman question was harmless. Based on this posture, and because we lack sufficient information in the record to assess the circumstances under which Swayne allegedly accused Defendant of being the trigger man, we assume without deciding that the admission of Officer Brown's question violated Defendant's confrontation rights. We now consider whether this assumed constitutional violation was fundamental error.

> Under the doctrine of fundamental error, an appellate court has the discretion to review an error that was not preserved in the trial court to determine if a defendant's conviction shock[s] the conscience because either (1) the defendant is indisputably innocent, or (2) a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused.

*Astorga*, 2015-NMSC-007, ¶ 14 (alteration in original) (internal quotation marks and citation omitted).

**{22}** Despite the admission of the triggerman question, Defendant's convictions do not shock the conscience of this Court. First, Defendant is not "indisputably innocent." *Id.* As we will explain, the properly admitted evidence was sufficient to support Defendant's convictions. Second, the admission of the triggerman question does not make the conviction "fundamentally unfair notwithstanding the apparent guilt of the accused." *Id.* Before redacting the interview, the district court thoroughly reviewed the transcript of the recorded interview and discussed Defendant's objections at length with the parties in an effort to allow both sides to fairly present and object to the proffered evidence. Any error based on the admission of Officer Brown's question—"[W]hy would they tell me you were the trigger man?"—in the redacted version of the interview that was ultimately admitted into evidence does not invite doubt as to the fundamental fairness of Defendant's convictions. Because there was overwhelming evidence of Defendant's guilt, and the district court took great care in reviewing and redacting the interview transcript, Defendant's convictions do not shock our conscience. We therefore conclude that the assumed violation of Defendant's confrontation rights was not fundamental error requiring reversal of his convictions.

**B.    Admission of Defendant's Police Interview**

**{23}** Defendant argues that references to his drug use within the recorded police interview were admitted in violation of Rules 11-403 and 11-404(B) NMRA. The district court redacted the police interview based on Defendant's objections to relevancy and prejudice related to his drug use. Defendant asserts that the district court did not remove "over twenty references to drug use," and those references were "highly prejudicial." We review the admission or exclusion of evidence for abuse of discretion, *see State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641, and we address each alleged rule violation in turn.

**{24}** First, under Rule 11-403, a "court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice." Since assessing the risk of unfair prejudice is highly fact-determinative, "much leeway is given trial judges who must fairly weigh probative value against probable dangers." *State v. Otto*, 2007-NMSC-012, ¶ 14, 141 N.M. 443, 157 P.3d 8 (internal quotation marks and citation omitted).

**{25}** At trial, the district court explained that it did not remove every reference to Defendant's drug use from the recorded interview because those references "seemed to provide a complete picture, the context of what was happening that day." Specifically in regard to the Rule 11-403 prejudice analysis, the district court stated that the prejudice caused by references to Defendant's drug use "certainly was reduced when you compare it to the relevance."

**{26}** Giving just leeway to the decision of the district court, we conclude that admitted references to Defendant's drug use in the recorded interview were not unduly prejudicial and did not violate Rule 11-403. The prejudicial effect of these references was minimal as evidence of drug use pervaded the trial. Each person present on the day of the killing (Defendant, Victim, Swayne, Freer, and Chavez) all used or sold drugs. In particular, evidence of Defendant's own drug use had already been introduced through witness testimony by the time the jury heard the recorded police interview. Evidence was presented that Defendant accompanied Victim to a drug deal in the hours leading up to Victim's death. Freer testified that Defendant was "very much high" and acting "[t]weaked" before he shot Victim. Because Defendant was not unduly prejudiced, we conclude that the district court did not abuse its discretion in admitting certain references to Defendant's drug use in the recorded interview.

**{27}** In addition to arguing the prejudicial effect of the references to his drug use in the recorded interview, Defendant asserts that those references should have been excluded as inadmissible propensity evidence under Rule 11-404(B). Pursuant to that rule, "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

**{28}** Defendant's argument for exclusion of evidence of his drug use under Rule 11-404(B) is unavailing. Evidence of prior bad acts is inadmissible to show the defendant's "disposition to commit the *crime charged.*" *State v. Lucero*, 1992-NMCA-107, ¶ 9, 114 N.M. 489, 840 P.2d 1255 (emphasis added). Had this been a trial for drug crimes, then

references to Defendant's drug use would likely be inadmissible to demonstrate Defendant's propensity to violate drug laws. Here, however, Defendant was not charged with a drug-related offense; he was charged with murder, conspiracy to commit murder, assault, and tampering with evidence. References to Defendant's drug use do not reveal a propensity or disposition to commit the violent crimes charged. Therefore, the district court did not abuse its discretion in admitting evidence of Defendant's drug use within the recorded police interview.

## C.     Co-Defendant's Plea and Disposition Agreement

**{29}**     Swayne pleaded guilty to second-degree murder and conspiracy to commit first-degree murder for the death of Victim. At trial, Defendant sought to admit Swayne's plea and disposition agreement to support the defense's theory that Defendant was not the one who killed Victim. The district court ruled in limine that the plea and disposition was inadmissible hearsay and could not be admitted. In addition, the district court ruled that Swayne's plea and disposition agreement was not relevant because he pleaded guilty under an aiding and abetting theory. In that respect, because he pleaded guilty as an accomplice to the murder, Swayne's plea did not make it less probable that Defendant actually fired the shot that killed Victim.

**{30}**     Defendant argues that the district court's exclusion of Swayne's guilty plea violated his constitutional right "to present a complete defense," *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006), and he asks this Court to review the exclusion of the plea under a de novo standard. *See State v. Attaway*, 1994-NMSC-011, ¶ 8, 117 N.M. 141, 870 P.2d 103 (applying a de novo standard to threshold constitutional issues). We disagree. The exclusion of Swayne's plea did not deny Defendant the opportunity to present a complete defense. Defendant could have called Swayne to testify and questioned him regarding his role in the killing. Since Swayne had already pleaded guilty, he did not have a Fifth Amendment right not to testify. *See State v. Ramirez*, 2011-NMSC-025, ¶ 8, 149 N.M. 698, 254 P.3d 649. For this reason, the exclusion of the plea did not foreclose Defendant's ability to present evidence of Swayne's guilt and therefore did not violate Defendant's constitutional right to present a complete defense. Accordingly, we review the exclusion of Swayne's plea for an abuse of discretion. *See State v. Montoya*, 2014-NMSC-032, ¶ 15, 333 P.3d 935.

**{31}**     "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Aguilar*, 2019-NMSC-017, ¶ 28, 451 P.3d 550 (internal quotation marks and citation omitted).

**{32}**     We conclude that the district court did not abuse its discretion when it excluded Swayne's guilty plea and disposition agreement because Swayne's plea was inadmissible hearsay that did not meet an exception. It is well established that a co-defendant's guilty plea is hearsay if offered as substantive evidence. *See Tollardo*, 2012-NMSC-008, ¶¶ 18, 20. Nonetheless, a co-defendant's guilty plea may be

admissible to impeach the testimony of a co-defendant, *id.* ¶ 20, but because Swayne did not testify at Defendant's trial, his plea could not be admitted to impeach him. We conclude therefore that the district court did not abuse its discretion by excluding Swayne's plea and disposition agreement on hearsay grounds. Because we reach this conclusion, we need not address Defendant's remaining claims of error on this issue.

## D.     Accomplice Liability

**{33}**     At trial, Defendant objected to instructing the jury on accomplice liability, arguing that the State had failed to put on evidence to support a theory that Defendant was an accessory to the killing. Defendant maintains this argument on appeal  and further contends that the jury was confused or misdirected by the instructions on accomplice liability. We conclude that the jury was properly instructed on accomplice liability and there is no indication of juror confusion based on the instructions given.

### 1.     Accessory instruction

**{34}**     We consider the "propriety of jury instructions given or denied . . . a mixed question of law and fact" that we review de novo. *State v. Henley*, 2010-NMSC-039, ¶ 12, 148 N.M. 359, 237 P.3d 103 (internal quotation marks and citation omitted). The accessory instruction given in this case explained that Defendant may be found guilty of a crime even if Defendant did not do the physical act of the crime, as long as the State proved beyond a reasonable doubt that (1) "[D]efendant intended that the crime be committed;" (2) "the crime was committed;" and (3) "[D]efendant helped, encouraged or caused the crime to be committed." The instruction given was the uniform jury instruction on accomplice liability in use at the time of Defendant's trial, UJI 14-2822 NMRA (2017). The first use note to this UJI states that the instruction should be used "if the evidence supports liability as [a] . . . co-conspirator regardless of whether conspiracy is charged[.]"

**{35}**     There is no "distinction between accessory and principal liability" in New Mexico. *State v. King*, 2015-NMSC-030, ¶ 21, 357 P.3d 949. A charge against a defendant as a principal includes "a corresponding accessory charge" if supported by the evidence at trial. *Id.* (internal quotation marks omitted).

**{36}**     As we explain later in this decision, there was sufficient evidence to support Defendant's conviction for conspiracy to commit first-degree murder. Since the evidence supported the conspiracy charge, it was sufficient to support an accessory charge to correspond with the charge that Defendant was the principal perpetrator of the murder. UJI 14-2822 NMRA (2017). Thus, in accordance with the first use note of the UJI and applicable precedent, the district court was correct to instruct the jury on accomplice liability.

### 2.     Jury confusion

**{37}** We turn to Defendant's argument that the jury was confused by the accessory instruction. We review preserved issues related to defective jury instructions for reversible error, asking "whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citation omitted). "[J]uror confusion or misdirection may stem . . . from [(1)] instructions that are facially contradictory or ambiguous, . . . [or (2)] instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.*

**{38}** Defendant does not assert that the accessory instruction was "facially contradictory or ambiguous," nor does he argue that the instruction "fail[ed] to provide . . . an accurate rendition of the relevant law." *Id.* Instead, Defendant claims the jury must have been confused on the proper application of accomplice liability because it asked the district court a question during deliberations.

**{39}** The jury sent the district court a note asking whether it could convict Defendant of murder on an accomplice theory even if it believed that Defendant "did not personally kill the victim." While this question may reveal general confusion regarding accomplice liability, there is no evidence that the confusion stemmed from an error in the instructions given. Accordingly, we reject Defendant's argument that the accessory instruction confused or misled the jury.

### E.    Double Jeopardy

**{40}** Defendant argues that his fifteen-year sentence for conspiracy to commit first-degree murder violated the prohibition against multiple punishments for the same conduct under the United States and New Mexico constitutions. *See State v. Torres*, 2018-NMSC-013, ¶¶ 15-16, 413 P.3d 467 (explaining that double jeopardy can be violated when "a defendant is convicted under different statutes but the same criminal conduct is the basis underlying the multiple charges"). Under the sentencing statute, a second-degree felony that results in death carries a longer sentence than a second-degree felony that does not result in death. NMSA 1978, § 31-18-15(A)(4), (7) (2016). Defendant contends that he was impermissibly punished twice for the death of Victim: once for the first-degree murder and once for the conspiracy to commit first-degree murder, which is a second-degree felony resulting in death. For the reasons that follow, we reject this argument and affirm Defendant's sentences.

**{41}** Whether Defendant's sentences violate double jeopardy is a question of law which we review de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. The Double Jeopardy Clause of the United States Constitution, incorporated to the states in *Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides that "[n]o person shall . . . be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. Similarly, the New Mexico Constitution states that "[n]o person shall . . . be twice put in jeopardy for the same offense[.]" N.M. Const. art. II, § 15. To determine whether double jeopardy has been violated under a theory of unitary conduct, as Defendant argues, the Court asks (1) "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct

violates both statutes" and (2) whether "the legislature intended to create separately punishable offenses" in the statutes at issue. *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. If the conduct is unitary, and the Legislature did not intend to create separately punishable offenses, then "the double jeopardy clause prohibit[s] multiple punishment in the same trial." *Id.* However, "[i]f the Legislature clearly authorized multiple punishments the analysis is over, and there is no double jeopardy violation." *Torres*, 2018-NMSC-013, ¶ 21. Defendant argues that his sentence for the conspiracy conviction was "enhanced" based on the death of Victim, thereby punishing him twice for the same conduct of killing Victim. We disagree for two reasons.

**{42}** First, we conclude that the conduct underlying Defendant's convictions and sentences for murder and conspiracy was not unitary. There are two instances of criminal conduct at issue here. The first is the act of shooting and killing Victim, for which Defendant was convicted of first-degree murder. The second is the act of engaging in a conspiracy, which is defined as "knowingly combining with another for the purpose of committing a felony." Section 30-28-2(A). Because the conspiracy in this case resulted in the death of Victim, Defendant was punished more severely for the act of conspiring to kill. *See* Section 31-18-15(A)(4). As we have stated, the "resulting in death" language of Section 31-18-15(A)(4) is merely a factual consequence of a crime and does not describe conduct. *See State v. McDonald*, 2004-NMSC-033, ¶ 18, 136 N.M. 417, 99 P.3d 667. Defendant was appropriately punished for each act of criminal conduct.

**{43}** Second, we conclude that Defendant's conspiracy sentence was not "enhanced" due to the death of Victim. Rather, Defendant received the appropriate basic sentence for a second-degree felony that resulted in death. Conspiracy to commit first-degree murder is a second-degree felony. Section 30-28-2(B)(1). The basic sentence for a second-degree felony is nine years imprisonment. Section 31-18-15(A)(7). The basic sentence for a second-degree felony *that results in the death of a human being* is fifteen years imprisonment. Section 31-18-15(A)(4). The Legislature clearly intended to punish felonies that resulted in death more severely than felonies that did not. *See State v. Franco*, 2016-NMCA-074, ¶¶ 21, 28, 31, 387 P.3d 279, *cert. denied*, (S-1-SC-35986, Aug. 1, 2016).

**{44}** Because the conduct underlying his convictions and sentences for first-degree murder and conspiracy to commit first-degree murder was not unitary, and because the Legislature intended harsher punishments for crimes resulting in death, we conclude that Defendant's rights under the Double Jeopardy Clause were not violated. Accordingly, we affirm his sentences.

## F.    Sufficiency of the Evidence

**{45}** Defendant argues that the State failed to present sufficient evidence that (1) Defendant acted with the deliberate intent required of first-degree murder, (2) Defendant was engaged in a conspiracy to kill Victim, and (3) Defendant acted as an accomplice. Our review of the sufficiency of the evidence is "highly deferential" to the verdict. *State*

*v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930. Accordingly, we ask "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Id.* (internal quotation marks and citation omitted). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted).

> Evidence is viewed in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. In particular, New Mexico appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury. So long as a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions.

*State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (alterations, internal quotation marks, and citations omitted).

## 1. Deliberate intent to kill

**{46}** Defendant argues that the State failed to show that he had the deliberate intention to kill Victim. The jury was instructed that a deliberate intention is one that is "arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action." The jury instructions further explained that "[a] calculated judgment and decision may be arrived at in a short period of time" and that "[a] mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill." Finally, the jury was instructed that "[t]o constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice."

**{47}** We have held that evidence of deliberate intent "can include earlier confrontations or other common areas of friction leading to violence, or fleeing the scene, disposing of evidence, or concocting false alibis[.]" *State v. Smith*, 2016-NMSC-007, ¶ 20, 367 P.3d 420 (alterations, omissions, internal quotation marks, and citations omitted). Motive and manner of killing can also support a finding of deliberate intention. *E.g.*, *id.* ¶¶ 20-22; *State v. Rojo*, 1999-NMSC-001, ¶ 24, 126 N.M. 438, 971 P.2d 829.

**{48}** We conclude in this case that the State presented sufficient evidence to prove that Defendant had the deliberate intention to kill Victim. First, Defendant's own statements reflect premeditation and deliberate intent. Defendant told Victim while in his truck that he would "put one in [him] real quick" and he told Chavez that he did not "keep any witnesses." According to Chavez's testimony, on their way back to Freer's apartment, Defendant called Swayne and said, "I have him in the car. Are you ready to do this now?" Second, Defendant's prior confrontation with Victim supports a finding of

deliberate intent. According to Freer, Defendant shot at Victim's legs, threatening Victim by saying, "You don't mess with my boy. You don't fuck with my friends." Finally, Defendant had several plausible motives to kill Victim. Defendant may have wanted revenge for his friend Swayne after Victim stole from Swayne. He may have wanted to take Victim's truck. He may have been paid to do the murder by Swayne, as Swayne gave him the money from the drug deal just before Victim was shot. The evidence supports any one of these motives and those motives, in turn, support a finding of Defendant's deliberate intention to kill Victim.

## 2. Conspiracy

**{49}** Defendant argues that the State did not present sufficient evidence of a conspiracy between Defendant and Swayne to kill Victim. To find Defendant guilty of conspiracy to commit first-degree murder, the jury was instructed that it must find that "[D]efendant and another person by words or acts agreed together to commit first degree murder by a deliberate killing . . . [and D]efendant and the other person intended to commit first degree murder by a deliberate killing." To prove conspiracy it is not necessary "to prove a formal agreement to accomplish the illegal act. The crime of conspiracy is rarely susceptible of proof by direct evidence. Nevertheless, it can be established by circumstantial evidence." *State v. Deaton*, 1964-NMSC-062, ¶ 5, 74 N.M. 87, 390 P.2d 966. The agreement underlying a conspiracy is "generally a matter of inference deduced from the facts and circumstances, and from the acts of the person accused done in pursuance of an apparent criminal purpose." *Id.* ¶ 6.

**{50}** Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the State presented sufficient evidence to support Defendant's conviction of conspiracy to commit first-degree murder. First, according to Defendant's own version of events, Swayne told Defendant that he had been wronged by Victim and asked Defendant to come to Freer's apartment on the day of the killing. Swayne then gave Defendant a gun and told him to threaten Victim while accompanying Victim on a drug deal. Next, Chavez testified that Defendant called Swayne to ask if he was "ready to do this" as Victim and Defendant drove back to Freer's apartment. Finally, Freer testified that she watched Defendant and Swayne communicating in hushed tones and body language, and that at one point before the killing, Swayne told Defendant, "You got this" or "You got it." Immediately before the killing, Freer testified that Swayne and Defendant made acknowledging eye contact. All this evidence leads to a supported inference that Swayne and Defendant had a mutual design to kill Victim.

## 3. Accomplice liability

**{51}** Defendant argues that the State failed to prove that he was an accomplice to the murder, so the jury should not have been instructed on accomplice liability. A conviction on an accomplice theory cannot be based in mere speculation. *State v. Vigil*, 2010-NMSC-003, ¶ 19, 147 N.M. 537, 226 P.3d 636. However, "evidence of aiding and abetting may be as broad and varied as are the means of communicating thought from one individual to another; by acts, conduct, words, signs, or by any means sufficient to

incite, encourage or instigate commission of the offense." *Id.* (internal quotation marks and citation omitted). As we have noted herein, a charge against a defendant "as a principal include[s] a corresponding accessory charge, assuming the evidence at trial support[s] the charge." *King*, 2015-NMSC-030, ¶ 21 (internal quotation marks and citation omitted).

**{52}** In this case, the same evidence supporting the conspiracy supports a theory of accomplice liability. The State was not required to give the jury a theory of the case in which Defendant was both the principal and the accessory. We therefore conclude that sufficient evidence supports Defendant's first-degree murder conviction under a theory of accomplice liability.

### III.     Conclusion

**{53}** We conclude that Defendant received a fair trial, his sentences do not offend the principles of double jeopardy, and his convictions are supported by sufficient evidence. We therefore affirm Defendant's convictions and corresponding sentences.

**{54}   IT IS SO ORDERED.**

**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**